MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:     2014 ME 134
Docket:       Cum-14-71
Argued:       September 4, 2014
Decided:      December 2, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM,
              JJ.
Majority:     SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM,
              JJ.
Concurrence:  ALEXANDER and HJELM, JJ.


PETER E. LIGHT

v.

PAOLA D'AMATO


SAUFLEY, C.J.

[¶1]  Paola D'Amato appeals from a divorce judgment and post-judgment findings of fact and conclusions of law entered by the District Court (Portland, *Mulhern, J.*) and from the court's denial of her motion to reopen the evidence, which she filed after the divorce judgment was entered.  *See* M.R. Civ. P. 43(j), 52.  D'Amato wants to move to Italy and take the parties' daughter with her.  Peter E. Light has been an involved father and opposes D'Amato's relocation with their daughter.  We affirm the judgment except to remand the matter for the court to dispose of a deferred compensation plan that the parties agree must be distributed as marital property.

## I. BACKGROUND

[¶2]  Light and D'Amato were married in Maine on February 1, 2000.  They are the parents of one daughter, who was born in July 2005.  Light filed a divorce complaint in February 2012, and a four-day trial was ultimately held in July 2013.  After the court entered a divorce judgment in December 2013, both parties moved for additional findings of fact and conclusions of law and to alter or amend the judgment pursuant to M.R. Civ. P. 52(b) and 59(e).  The court amended some findings and corrected clerical errors.  Through its judgment and its post-judgment rulings, the court found the following facts, all of which are supported by competent evidence in the record.  *See Akers v. Akers*, 2012 ME 75, ¶ 3, 44 A.3d 311.

[¶3]  The parties' daughter attended kindergarten and first grade in public school in Falmouth.  She has done well in the Falmouth school and participates in extracurricular activities.  She has close friends who live in Falmouth, and her after-school care provider is in Falmouth.  At the time of trial, she was almost eight years old.

[¶4]  After the divorce proceedings began, the child began seeing a therapist because she was having nightmares about her parents disappearing.  By the time of trial, the child's therapist had met with the child more than forty times.  The child's progress has been slower than that of other children.  Her sources of stability are

her parents, her school, her peers, her after-school care provider, and her therapist. Mental health care providers who have observed the child have noted that she has difficulty separating from either parent. She has a close emotional bond with each parent, and prolonged periods of separation from either parent would be harmful to her.

[¶5] Although the record reflects that Light has not been the child's primary caregiver for any extended period of time, he has been regularly and actively involved in her life. Light struggles with several challenges. He has abused alcohol and used pornography excessively. He has also been diagnosed with attention-deficit hyperactivity disorder.

[¶6] Light sees a psychotherapist weekly and intends to continue therapy. He has made progress with his alcohol treatment. At the time of trial, he had a diagnosis of alcohol abuse in remission despite "slips" in October and November 2012, New Year's 2013, and March 2013, and he had not had a drink since that March. Light's excessive use of pornography had a significant impact on the parties' marriage and their finances. Light has installed Net Nanny on his computer and eliminated cable and Internet service from his home.

[¶7] Despite his challenges, Light has proved capable of taking the child to school and appointments on time. He is able to manage the child's schedule, and D'Amato has trusted Light as a safe caregiver for their daughter. She left the child

4

in his care when she traveled to other states and countries during the pendency of the divorce. At the time of trial, Light intended to find a suitable home for himself and the child in Falmouth.

[¶8] D'Amato has been the primary custodial parent during the pendency of the divorce, and her ability to provide nurturing care for the child has not been questioned. D'Amato wants to move back to Italy, her country of origin, to live near her mother and stepfather, and her current boyfriend. The child has only visited Italy when on vacation with both of her parents. She understands some Italian language, but she cannot converse fluently and is reluctant to speak the language. At the time of the trial, D'Amato was equivocal as to whether she would move to Italy if she could not take her daughter with her.

[¶9] The court analyzed the relevant statutory factors, *see* 19-A M.R.S. § 1653(3)(A)-(N), (S) (2013), and found that, while the parties are both in Maine, it is in the child's best interest to remain in the primary custodial care of her mother. Light did not, at trial or before us, challenge that finding.

[¶10] The court also concluded, however, that if D'Amato relocates to Italy, the child's need for stability requires that she remain in Maine. The court found that she will have a more stable environment by living primarily in Falmouth where she can remain at her school and enjoy her substantial support network of friends, paternal family, and neighbors. The court placed significant weight on the

stability that the child would obtain by living primarily in her existing school district and keeping in contact with her friends and her therapist. The court also found that, although both parents are involved and capable of providing love, affection, and guidance, D'Amato appears to be placing her desire to relocate above her daughter's needs. In addition, the court expressed some concern that D'Amato would not allow and encourage frequent contact between the child and Light, especially if she moved to Italy. The court found that child would benefit from the parents learning to cooperate and resolve disputes effectively through an organized program—a task that they would likely be unable to undertake if D'Amato moved to Italy.

[¶11] Ultimately, the court ordered that, until D'Amato moves to Italy—or if she chooses not to move to Italy—primary residence of the child will remain with D'Amato. The order directs that the child be with her father every Monday and Tuesday night, and alternating weekends. If D'Amato moves to Italy, however, primary residence will shift to Light and the child will remain enrolled in school in Falmouth. The court divided holiday time for purposes of each possible residency situation.

[¶12] The court entered a child support order and directed that the marital real estate be sold and the proceeds divided equally between the parties. The court also reached findings about the parties' earning capacities and ordered Light, who

6

is employed by the Royal Bank of Canada as a financial advisor, to pay D'Amato general spousal support for six and a half years. The court found that Light had committed economic waste amounting to $160,503 and ordered him to pay one-half of that value to D'Amato.

[¶13]   The court divided the parties' financial assets and debts roughly evenly. In doing so, it found that Light's RBC Deferred Compensation Plan, which will vest on January 1, 2021, if Light is still employed at RBC on that date, had no marital value. The court did not allocate that asset to either party in its disposition of the marital property.

[¶14]   After the court entered its judgment, D'Amato moved to reopen the evidentiary record because, she contended, she missed the opportunity for an Italian position that would have paid her $53,595; her hours working at her place of employment in the United States were reduced; in late September 2013, Light indicated that he was living in Portland and could not afford to move to Falmouth; and D'Amato intended to move to South Portland. The court denied the motion to reopen.

[¶15]   D'Amato timely appealed, and Light timely cross-appealed. 14 M.R.S. § 1901 (2013); M.R. App. P. 2(b)(3). Light thereafter filed for bankruptcy, and the United States Bankruptcy Court for the District of Maine

granted him relief from the automatic stay in bankruptcy so that these divorce proceedings could be completed.

## II. DISCUSSION

[¶16]   D'Amato and Light raise several issues, most of which we find unpersuasive.  We affirm the trial court's judgment in most respects and write to address only three issues: (A) whether the court unconstitutionally restricted D'Amato's right to travel by ordering that the parties' daughter will remain in Maine if D'Amato chooses to move to Italy, (B) whether the court abused its discretion in refusing to reopen the evidentiary record to allow D'Amato to present evidence of the parties' changed residential circumstances and work prospects, and (C) whether the court erred in failing to dispose of Light's deferred compensation account after determining that it had no marital value.

A.    Constitutional Right to Travel

[¶17]   D'Amato contends that, by awarding her primary residence of the child only if she remains in the United States, the trial court has unconstitutionally interfered with her right to travel.  "We review questions of law, including alleged constitutional violations . . . de novo."  *In re G.W.*, 2014 ME 30, ¶ 6, 86 A.3d 1228 (quotation marks omitted).

[¶18]  The United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const.

8

amend. V; *see also* U.S. Const. amend. XIV. "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 125 (1958).

[¶19] The court's judgment establishing a change in the child's primary residence if D'Amato relocates to Italy does not constrain D'Amato's freedom to travel to Italy. *Cf. Arredondo v. Betancourt*, 383 S.W.3d 730, 744 (Tex. App. 2012) (vacating an order that required the mother to seek approval from her ex-husband for any travel outside of the United States, whether or not their child was with her). Nor does the judgment prevent her from settling permanently in her country of origin. *See Brown v. Dep't of Inland Fisheries & Wildlife*, 577 A.2d 1184, 1185 (Me. 1990) (holding that the Fifth Amendment protection extends to travel for purposes of "migration undertaken with intent to settle and abide" (quotation marks omitted)). Rather, the court determined that it is in the child's best interest to retain her primary residence in Maine whether or not D'Amato moves to Italy. The court's decision might affect D'Amato's decision-making, but it does not impair her right to travel and settle in whatever location she chooses.

[¶20] Even if the judgment has a collateral effect on D'Amato's freedom to travel, however, the court appropriately considered and balanced the various fundamental or constitutionally protected interests at stake in reaching its decision. When parental relocation is at issue, a balance must be struck between "a custodial

parent's right to engage in interstate travel and to decide where the parent and child will reside, and a non-custodial parent's right to have continuing and meaningful parent/child contact with the child." *Malenko v. Handrahan*, 2009 ME 96, ¶ 24, 979 A.2d 1269; *see also Arnott v. Arnott*, 293 P.3d 440, 454 (Wyo. 2012) (acknowledging that the custodial parent's right to travel is not the only interest to be protected in relocation cases because the child and other parent have "an equally important fundamental right of familial association").[1]

[¶21]  Because fundamental rights are at stake for a relocating parent, a nonrelocating parent, and a child, and because the court's determination must be focused on the child's best interest, *see* 19-A M.R.S. § 1653(3) (2013), a divorce judgment's effect on a parent's decision to relocate will not, per se, constitute a constitutional violation. *See, e.g.*, *In re Marriage of Ciesluk*, 113 P.3d 135, 142 (Colo. 2005) ("Though consideration of the parents' competing constitutional interests is important in relocation cases, the conflict is not simply between the parents' needs and desires.  Rather, the issue in relocation cases is the extent to which the parents' needs and desires are intertwined with the child's best interests." (citation omitted)); *Jaramillo v. Jaramillo*, 823 P.2d 299, 308-09 (N.M. 1991)

---

[1]  Many courts "have concluded that the state's interest in protecting the welfare of children . . . provide[s] the required justification" to burden a parent's right to travel. *In re Marriage of Fedorov*, 206 P.3d 1124, 1134 (Or. Ct. App. 2009) (citing cases).  "[O]thers hold that what is required is a balancing of the needs of the child against the rights of the parents." *Id.* (citing cases).  We endorse the balancing approach. *See Malenko v. Handrahan*, 2009 ME 96, ¶ 24, 979 A.2d 1269.

(holding that neither the relocating spouse nor the spouse remaining in the state has the benefit of a presumption; instead it is the burden of both to present evidence regarding the child's best interest).

[¶22] A balancing of rights and interests must be undertaken in the context of the case, with full consideration of the child's best interest. *See, e.g.*, *In re Custody of D.M.G.*, 951 P.2d 1377, 1385 (Mont. 1998) (holding that "general, non-case-specific proof presented at trial on the best interests issue" was inadequate to demonstrate that the particular child's best interest was served by the judgment that restricted a parent's travel); *In re Marriage of Cole*, 729 P.2d 1276, 1281 (Mont. 1986) (requiring "the parent requesting the travel restriction to provide sufficient proof that a restriction is, in fact, in the best interests of the child").

[¶23] Here, the court found that it was most important to the child's best interest that she reside primarily in the location where she has numerous community supports. As between two parents whom the court considered to be fit and capable, the court determined that D'Amato should have primary residence if D'Amato remains in Maine but that Light should have primary residence instead if D'Amato moves to Italy.

[¶24] Given the factual record; the court's determination that the child's best interest is served by having continued, regular contact with both parents; and

the court's finding that Light is more likely to foster contact with the other parent in the event of geographic separation, the court's judgment does not violate the balance of the parents' and the child's constitutional and fundamental rights. *See* 19-A M.R.S. § 1653(1)(C) (2013) (declaring that, "except when a court determines that the best interest of a child would not be served, it is the public policy of this State to assure minor children of frequent and continuing contact with both parents"); *see also Rowland v. Kingman*, 629 A.2d 613, 616-17 (Me. 1993) (upholding a judgment ordering that a mother would have primary residence unless and until she moved to Oregon because staying in Yarmouth was in the children's best interests and the father was more likely to foster the children's continued contact with their other parent across the distance); *Domingues v. Johnson*, 593 A.2d 1133, 1140 (Md. 1991) (observing that, "where both parents are interested, and are actively involved with the life of the child on a continuing basis, a move of any substantial distance may upset a very desirable environment, and may not be in the best interest of the child").

[¶25]  We conclude that the court did not limit the mother's constitutional right to travel and that, even if the judgment did collaterally affect that right, the court did not deprive D'Amato of her liberty without due process when it balanced the parents' and the child's rights and interests in reaching its judgment.

12

B.    Motion to Reopen the Evidence

[¶26]   Although D'Amato knew in September 2013 that Light might not be able to afford to live in Falmouth, she waited three months and did not seek to reopen the evidence, *see* M.R. Civ. P. 43(j), until after the court had entered its judgment in December.  When she moved to reopen the evidence, she argued that new evidence should be accepted "based on a substantial change in circumstance since trial concluded."   Notwithstanding the reference to a substantial change in circumstances, D'Amato has not filed a post-judgment motion to modify the judgment.  *See* 19-A M.R.S. §§ 1653(10), 1657 (2013); *Jackson v. MacLeod*, 2014 ME 110, ¶ 21, 100 A.3d 484 (requiring a parent who moves to modify to "demonstrate that a substantial change in circumstances has occurred since the previous decree").

[¶27]   "A party who has rested cannot thereafter introduce further evidence except in rebuttal unless by leave of court."  M.R. Civ. P. 43(j).  "The trial court has discretion in determining whether a party may reopen its case after the close of the evidence." *In re Danielle S.*, 2004 ME 19, ¶ 2, 844 A.2d 1148.  The court may consider various factors, "including whether allowing additional evidence would be necessary for an accurate adjudication, would give the court a more complete picture, or would create any unfair disadvantage to the other party."  *Dalphonse v. St. Laurent & Son, Inc.*, 2007 ME 53, ¶ 16, 922 A.2d 1200.

[¶28]   Here, D'Amato moved to reopen the evidentiary record on the grounds that her employment and city of residence have changed, and that Light indicated in September 2013 that he could not afford to move to Falmouth and was instead living in Portland.  In the divorce judgment, the court's determination of the child's best interest for purposes of primary residence was based, in large part, on evidence that the child would benefit from remaining in Falmouth for school and for after-school care.  Accordingly, evidence that the child—whether residing with her mother or her father—will lose her community supports in the Falmouth school system and will also likely have a new after-school care provider could constitute a substantial change in circumstances that could allow the court to modify the judgment.  *See* 19-A M.R.S. §§ 1653(10), 1657.

[¶29]  The court did not, however, abuse its discretion in declining to reopen the record after the contentious and lengthy process that had already taken place. D'Amato was aware of pertinent information before the court entered its judgment and could have moved to reopen the evidence in time for the court to consider that evidence in crafting its judgment.  Given the already extensive trial process and D'Amato's conflicting representations at trial about her relocation plans, the court's denial of the motion to reopen the evidence after it entered the judgment was well within its discretion.  If circumstances have changed substantially since

14

the entry of the divorce judgment, a specific process exists to address motions to modify parental rights and responsibilities. *See id.*

C.      Deferred Compensation Account

[¶30]    Because the parties do not dispute that Light's unvested RBC Deferred Compensation Plan, like an unvested pension, constitutes marital property, *see Stotler v. Wood*, 687 A.2d 636, 638 (Me. 1996), we vacate the judgment to the extent that the court failed to allocate it to one party or the other. On remand, the court must distribute it as part of the overall equitable disposition of the marital property. *See* 19-A M.R.S. § 953 (2013). The court may do so on the evidence already presented.

The entry is:

> Judgment vacated with regard to the deferred compensation account. In all other respects, judgment affirmed. Remanded for further proceedings consistent with this opinion.

HJELM, J., with whom ALEXANDER, J., joins, concurring.

[¶31]  I concur with all but one aspect of the Court's opinion. I believe that D'Amato's constitutional challenge to the trial court's conditional order automatically changing the primary physical residence of the parties' child is moot.

Consequently, I respectfully disagree with the Court's willingness to address the merits of that issue and would dismiss it as non-justiciable.

[¶32]  The trial court was faced with changing testimony from D'Amato about her plans to relocate to Italy.  Nonetheless, it was required to adjudicate the parties' dispute about where their child would reside primarily.  In its judgment, the court described D'Amato's various plans and the limited duration of the resulting order in the following way:

> . . . [D'Amato] intends to move to Italy in 2013.  While she was initially adamant in her position that she would move to Italy with or without her daughter, when asked at the conclusion of her testimony whether she would move without her daughter she stated she was uncertain.  She then presented an alternative approach to residency to the Court on the last day of trial which had her living in the United States approximately 7 months and living in Italy approximately 5 months.  When asked whether this was the plan she would implement, she stated it was an option, rather than a plan she was definitely going to follow.  It is unclear when she intends to leave.  The Court is left with the quandary of not being clear on where [D'Amato] plans to live and when.  *This Order is based upon [D'Amato's] testimony that her relocation is imminent, and not based on a potential relocation that is a distant event.*

(Emphasis added.)  The court went on to order that the parties' child will reside primarily with D'Amato in Maine unless and until she relocates to Italy.  If she were to move to Italy "imminent[ly]" and not in the "distant" future, then the primary physical residence of the parties' child would change automatically to Light's home.

16

[¶33]  As the parties advised the Court at oral argument, D'Amato has not moved to Italy and at least at that time still lived in Maine.

[¶34]  The court issued its judgment on December 5, 2013.  It did not define the temporal parameter of what it would consider to be an "imminent" relocation from Maine to Italy.  Nonetheless, any imminence that began in December 2013 surely has passed.  Light himself acknowledges this, even though on this appeal he advocates in support of the provision.  When he filed his brief in June 2014, Light wrote that even then, any relocation by D'Amato to Italy would no longer have been imminent in relation to the date when the court issued its judgment.

[¶35]  The duration of the relocation provision must also be gauged based on the reasons why it would go into effect.  Because the relocation provision was automatic and self-executing, it is not surprising that the court limited its duration.  That limitation ensured that an automatic change in the child's primary physical residence would arise from the court's determination, based on the evidence presented at trial, that the change would be in the child's best interests.  Because of the amount of time that has passed since the court issued its judgment, if the relocation provision of the judgment were still in effect today, the child's primary physical residence would change automatically in circumstances that may well be different from the circumstances that existed when the court issued its judgment

and that might not justify the change. Therefore, that portion of the judgment is no longer enforceable.

[¶36] In *Malenko v. Handrahan*, 2009 ME 96, 979 A.2d 1269, the Court was presented with the same argument that D'Amato raises here: that an automatic relocation provision in a divorce judgment interfered with the relocating parent's constitutional right to travel. The parties in *Malenko* agreed that the provision changing primary physical residence had expired as of the date the judgment was issued. The *Malenko* Court held that the dispute therefore was moot and not justiciable because it called for an examination of the constitutionality of a court order that was no longer effective. *Id.* ¶ 26.

[¶37] The same situation exists here. D'Amato presents a constitutional challenge to the automatic relocation provision that is not in effect and that is no longer enforceable. The issue is therefore moot.[2] I would dismiss that part of D'Amato's contention on appeal and not address its merits.

_____

[2] If, in the future, D'Amato redevelops a plan to move to Italy and again seeks to retain primary physical residence of the child when she relocates, she will be required by statute to provide Light with advance notice of that intention, *see* 19-A M.R.S. § 1653(14) (2013), just as the judgment in *Malenko* required. 2009 ME 96, ¶ 27, 979 A.2d 1269. That will allow the court, either on a contested basis or otherwise, to evaluate the circumstances and then determine whether the best interests of the child support a modification of the judgment. *See* 19-A M.R.S. §§ 1653(3), 1657; *Sloan v. Christianson*, 2012 ME 72, ¶ 38, 43 A.3d 978.

18

**On the briefs:**

Gene R. Libby, Esq., and Tyler J. Smith, Esq., Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant Paola D'Amato

Joe Lewis, Esq., Port City Legal, Portland, for appellee Peter E. Light

**At oral argument:**

Gene R. Libby, Esq., for appellant Paola D'Amato

Joe Lewis, Esq., for appellee Peter E. Light

Portland District Court docket number FM-2012-192
FOR CLERK REFERENCE ONLY