MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2015 ME 53
Docket:       Ken-14-137
Argued:       December 9, 2014
Decided:      May 7, 2015

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and CLIFFORD, JJ.


FOX ISLANDS WIND NEIGHBORS et al.

v.

DEPARTMENT OF ENVIRONMENTAL PROTECTION et al.


JABAR, J.

[¶1]  The Department of Environmental Protection (DEP), Fox Islands Wind Neighbors (FIWN), and Fox Islands Wind (Fox Island) all appeal from a judgment entered by the Superior Court (Kennebec County, *Murphy, J.*) on FIWN's Rule 80C petition, reversing DEP's condition compliance order (CCO), remanding to DEP, and dismissing FIWN's First Amendment retaliation claim.[1]  We vacate the judgment.

## I.  BACKGROUND

[¶2]   On March 24, 2009, Fox Island applied to DEP for certification pursuant to 35-A M.R.S. § 3456 (2014) to build and operate a small-scale wind energy development project in Vinalhaven.   DEP approved the application on June 5, 2009, and issued a section 3456 certification to Fox Island.  As part of the

---

[1]  Rule 80C permits judicial review of final agency action or the failure or refusal of an agency to act, brought pursuant to the Maine Administrative Procedure Act.  *See* M.R. Civ. P. 80C.

2

certification, "condition #8" required Fox Island to implement a noise-reduction operation plan using a "revised operation protocol" if the wind turbines produced noise in excess of applicable standards. Having received certification for its project, Fox Island began construction.

[¶3] Some neighbors, organized as FIWN, began complaining about the noise from the turbines soon after the project began operating. FIWN hired an attorney and an acoustical consultant who collected sound data. Beginning in April 2010, FIWN submitted numerous noise complaints to DEP and requested that DEP take action against Fox Island requiring it to comply with the certification's conditions. DEP contacted the Town of Vinalhaven to inquire whether it wished to take enforcement action against Fox Island.[2] By letter dated November 22, 2010, the Town declined to pursue enforcement action and instructed DEP to "continue with enforcement."

[¶4] On November 23, 2010, DEP began the enforcement process by issuing a formal noncompliance letter to Fox Island. DEP found that on July 17 and 18, 2010, Fox Island exceeded the 45 dBA nighttime sound limit specified in the certification and instructed Fox Island to submit a "revised operation protocol"

---

[2] Title 35-A M.R.S. § 3456(3) (2014), provides, "Following certification . . . and during construction and operation," certification standards "may be enforced by the municipality in which the generating facilities are located at the municipality's discretion . . . ." That subsection further provides "The [DEP] is not responsible for enforcement of this section." Though the Town has express enforcement authority pursuant to subsection 3, this subsection plainly does not deprive DEP of its enforcement authority. Indeed, DEP concedes that it has the discretionary authority to enforce its certifications.

within 60 days as required by condition #8. After numerous exchanges between DEP and Fox Island, including several data requests by DEP and Fox Island's submission of a proposed operation protocol that DEP rejected, DEP demanded that Fox Island submit a revised operation protocol for approval.

[¶5] Fox Island submitted a revised operation protocol on April 11, 2011, and DEP issued a CCO on June 30. The CCO accepted Fox Island's revised protocol, finding that it "satisfactorily addresses the requirement of Special Condition #8 of [the certification] with respect to the conditions present during the July 2010 complaint period." The CCO also required Fox Island to implement certain noise reduction mechanisms when wind conditions matched those present on July 17 and 18, 2010.[3]

[¶6] On July 28, 2011, FIWN filed a Rule 80C petition in the Superior Court, asserting that the CCO was a product of political intervention; violated statutory provisions; exceeded DEP's statutory authority; was unsupported by substantial evidence; was arbitrary and capricious; and constituted an abuse of DEP's discretion. After numerous motions and orders, the court denied a motion to dismiss brought by Fox Island and DEP, which asserted that judicial review of

---

[3]   The CCO initially contained an "Appendix A," which included two sections: one regarding additional compliance testing and data submission by Fox Island, and one entitled "complaint response and resolution protocol," which required Fox Island to manage complaints in a specific way including maintaining a 24-hour telephone hotline and posting data to their website. Fox Island objected to the inclusion of Appendix A, and on June 30, 2011, DEP's Acting Commissioner issued the CCO without it.

4

the CCO was barred by 35-A M.R.S. § 3456(2). The court found that the CCO was an enforcement action by DEP subject to judicial review, and that therefore section 3456(2) did not apply.

[¶7] Nine days later, DEP filed a motion to reconsider and raised a new issue claiming that FIWN lacked standing to challenge DEP's enforcement of violations. The court denied the motion to reconsider and found that FIWN had standing. FIWN then filed an amended petition adding two additional claims for relief under the United States Constitution and 42 U.S.C. § 1983 (2014).[4] The court dismissed the independent claims, but granted FIWN permission to argue the constitutional claims as part of the Rule 80C proceeding.

[¶8] On March 10, 2014, the court issued its order on the Rule 80C petition, in which it restated its finding that the CCO was an enforcement action subject to judicial review. The court then reversed the CCO and remanded the matter to DEP with instructions that DEP "require an operational protocol which would prevent further violations of the noise rules," and issue a CCO that would address "significant vertical and directional wind shear," rather than wind direction, as the

---

[4] Count III of the amended petition alleged that the CCO violated FIWN's right to petition DEP as protected by the First Amendment, and Count IV alleged that the CCO discriminated against FIWN in violation of the Fourteenth Amendment's Equal Protection Clause by depriving its members of the right to be protected from excessive noise, which, FIWN claimed, is available to any other Maine resident living near a wind project.

main causative factor of Fox Island's noise infractions.[5]  The court denied FIWN's constitutional claims.  DEP and Fox Island appealed, and FIWN cross-appealed.

## II.  DISCUSSION

[¶9]  Generally, in Rule 80C appeals, a remand from the Superior Court to an executive agency for additional decision-making is not a final judgment. *Forest Ecology Network v. LURC,* 2012 ME 36, ¶ 16, 39 A.3d 74.  Nonetheless, in circumstances where "denial of appellate review could result in judicial interference with apparently legitimate executive department activity," we have recognized a narrowly construed separation of powers exception to the final judgment rule in extraordinary circumstances.[6]  *Id.* ¶ 18 (quotation marks omitted). This separation of powers exception applies "when prompt appellate review is required to prevent judicial interference with apparently legitimate executive department activity and thereby safeguard the separation of powers, and in order to avoid undue [judicial] disruption of administrative process."  *Id.* (quotation marks

---

[5]  The court also instructed DEP to issue further findings of fact or "otherwise articulate its rationale" for eliminating Appendix A.

[6]  The judicial economy exception to the final judgment rule has two requirements: (1) "that our review of a non-final order can establish a final, or practically final, disposition of the entire litigation" and (2) "that the interests of justice require that immediate review be undertaken."  *Forest Ecology Network v. LURC,* 2012 ME 36, ¶ 17, 39 A.3d 74 (quotation marks omitted).  The separation of powers exception is an exception to the first requirement.  *Id.* ¶ 18.

6

omitted).  Such an extraordinary circumstance exists here,[7] and we reach the merits of this interlocutory appeal under the judicial economy exception to the final judgment rule.

[¶10]  DEP and Fox Island argue that the CCO is not judicially reviewable and that the court violated separation of powers principles by remanding the CCO to DEP with further instructions.  FIWN argues that the court should not have dismissed its First Amendment retaliation claim.  We examine these claims in turn.

A.    Judicial Reviewability

[¶11]  We review issues of statutory interpretation de novo.  *Carrier v. Sec'y of State,* 2012 ME 142, ¶ 12, 60 A.3d 1241.  Section 3456(2), which governs siting considerations for small-scale wind projects, provides: "Notwithstanding any other provision of law, [DEP's] certification pursuant to this section . . . is not itself subject to judicial review as final agency action or otherwise."  The language is clear: DEP-issued certifications for small-scale wind projects are not judicially reviewable.    Therefore, the first question we must resolve is whether the challenged DEP action, the CCO, was part of DEP's certification process, or a post-certification enforcement action subject to judicial review.  *See* 5 M.R.S. § 11001 (2014); 38 M.R.S. § 347-A (2014).

---

[7]  In addition to the Superior Court's mandate that an executive branch agency explain why it has not undertaken a specific course of action in an enforcement matter, the remand with specific instructions to the DEP to institute an operational protocol may leave the DEP without recourse to judicial review because it cannot seek appellate review of its own action.

[¶12]   The statutory scheme for approving small-scale wind projects differentiates between the certification process itself and post-certification enforcement action.  Title 35-A M.R.S. § 3456(1) sets out the certification process, stating:  "A person may not construct or operate a wind energy development . . . without first obtaining a certification from [DEP]" that the project meets certain noise, shadow, and setback requirements.  The last sentence of this subsection states, "A person proposing a wind energy development subject to certification under this section . . . may not begin construction until the certification is received."  *Id*.  Subsection 3 specifies that enforcement is undertaken "[f]ollowing certification . . . and during construction and operation." *Id*. § 3456(3).

[¶13]  In June 2009, DEP completed its certification process when it notified Fox Island that its project had been reviewed and approved.  Section 3456(2) provides that DEP "shall issue its certification within 185 days of its acceptance of a request for certification . . . ."  Fox Island submitted its application on March 24, 2009, and DEP's approval on June 5, 2009, was well within the 185-day limit.

[¶14]  Pursuant to its certification-granting authority, DEP imposed certain conditions on Fox Island's project.  One of those conditions—condition #8—required Fox Island, within sixty days of a DEP noncompliance determination, to "submit, for [DEP] review and approval, a revised operation

8

protocol that demonstrates that the project will be in compliance . . . ." That the certification came with strings attached is not uncommon, and such practice is expressly authorized by section 3456.[8]

[¶15] Following certification of its project in June 2009, Fox Island began construction. A plain reading of section 3456 indicates that, at this point, the certification process that is a prerequisite to initiating construction had concluded. Fox Island completed construction and began operations in October 2009.

[¶16] Then, on November 23, 2010, DEP issued a formal noncompliance letter to Fox Island related to the noise infractions on July 17 and 18, 2010, and demanded that Fox Island submit a revised operation protocol pursuant to condition #8 of the certification. *See* 38 M.R.S. § 347-A(1)(B) ("Before initiating a civil enforcement action . . . [DEP] shall issue a notice of violation . . . cit[ing] the applicable law, rule and term or condition of the license, permit or order alleged to have been violated; and provide time periods for the alleged violator to take necessary corrective action and to respond to the notice."). DEP's letter concluded, "Provided that [Fox Island implements the revised protocol] in a manner that ensures compliance with [DEP] noise standards and permit conditions, [DEP] can resolve this matter without further action." *See id*. ("[T]he notice may

---

[8] Title 35-A M.R.S. § 3456(2) (2014), provides that "Certification may be conditioned on specific requirements."

state that *further* enforcement action will not be pursued if compliance is achieved within the time period specified in the notice or under other appropriate circumstances.") (emphasis added).

[¶17] By way of the June 30, 2011, CCO, DEP accepted Fox Island's revised protocol as compliant with condition #8 of the certification, and also required Fox Island to implement noise reduction mechanisms under certain wind conditions. That DEP was able to reach an agreement with Fox Island and did not have to go to court to enforce Fox Island's revised operations protocol does not render the CCO any less an enforcement action by DEP. Indeed, the CCO was very similar to a consent decree, which is a common DEP enforcement mechanism. *See id*. § 347-A(4). Further, DEP's action here was based on complaints regarding Fox Island's operations, and not on DEP's own initiative to modify or renew the certification.

[¶18] DEP and Fox Island argue that because the revised operation protocol was referenced in the original certification in special condition #8, the CCO approving it was merely an "amendment" of the initial certification and was therefore part of the certification process as well. We disagree. This characterization is contrary to a plain reading of the statute, pursuant to which the certification process was over when DEP granted Fox Island's application on June 5, 2009. That the certification contained conditions with which Fox Island

10

had to comply does not give DEP authority to "amend" the certification process many months or even years later. Nor does the initial attachment of conditions mean that any subsequent DEP action to bring a project into compliance with those conditions is not "enforcement." Section 3456 clearly sets an end date for the certification process because it provides that Fox Island could not have constructed, much less operated, its wind energy project until the certification process had been completed.

[¶19] Requiring Fox Island to comply with the certification's original stated conditions is an enforcement action, not an amendment to the certification. The "certification amendment" view posited by DEP and Fox Island would result in the imposition of new "enforceable standards" pursuant to DEP's certification authority. However, this view would render the "enforceability" of these new standards meaningless, because they could never be *enforced*, only *amended* through the imposition of further standards. If we were to accept this argument, the certification process would never have an end point as long as there were conditions initially imposed upon the project.

[¶20] For these reasons, the CCO was a judicially reviewable enforcement action commenced many months after certification was complete.

B.    The Condition Compliance Order

[¶21]   Because we conclude that DEP's CCO was an agency enforcement action, we review its merits.[9]   The CCO was issued following Fox Island's noise infractions on July 17 and 18, 2010, and it requires Fox Island to implement certain noise reduction mechanisms when the wind conditions match those present during those noncompliance periods.   Specifically, the CCO requires Fox Island to implement a particular operational plan between 7:00 p.m. and 7:00 a.m. whenever the wind direction is between 200 and 250 degrees, or south-southwest, and the wind shear falls within a specific range.

[¶22]   DEP's formal determination of noncompliance noted that Fox Island "is likely to exceed the required sound compliance level . . . when there is a significant vertical and directional shear."   The record on which the CCO was issued included evidence that wind shear is "most possible" with a south-southwest wind in the Gulf of Maine, as was the case on July 17 and 18, 2010.   The record also contained evidence that wind shear is possible with other wind directions as well, that not all wind shear would result in a noise violation, and that the level of shear should be measured by the "wind shear coefficient."   However, DEP

---

[9]   FIWN has standing to challenge the CCO because it has demonstrated a particularized injury, namely the claim of negative impact from excessive noise emanating from the wind energy development. *See Great Hill Fill & Gravel, Inc. v. Bd. of Envtl. Prot.*, 641 A.2d 184, 184 (Me. 1994).  Further, there is no separation-of-powers issue because this is an enforcement action, a final agency action for which judicial review is expressly authorized by statute.  *See* 5 M.R.S. §§ 11001, 11007 (2014); *Heckler v. Chaney*, 470 U.S. 821, 832-33 (1985).

12

concluded that, other than wind direction, there was no clear evidence of what factors affect this coefficient.

[¶23] FIWN argues that DEP could not, based on this record evidence, have rationally adopted a CCO that addresses only the speculative factor of wind direction to the exclusion of what FIWN contends is the one clear causative factor: wind shear of a certain coefficient. Essentially, FIWN contends that the CCO did not go far enough to address potential noise violations because its terms were limited to the wind direction present on July 17 and 18, 2010, when winds blowing from other directions might be just as harmful.

[¶24] However, the possibility of noise violations under meteorological conditions other than those present during the July violations does not negate the substantial record evidence supporting the CCO. *See* 5 M.R.S. § 11007(4)(C)(5) (2014) (providing that the court may reverse an administrative decision if it is "[u]nsupported by substantial evidence on the whole record"). The CCO addressed Fox Island's operations under weather conditions that DEP knew to have resulted in the only formal instances of noncompliance in the record. While these may not be the only conditions under which Fox Island's operations result in noise violations, DEP rationally focused on wind direction in issuing the CCO.

[¶25] This is not a case where DEP refused to undertake any enforcement action. The CCO, much like a consent decree, was an agreement reached by the

parties in lieu of DEP's pursuing further enforcement action such as sanctions or greater conditions imposed upon Fox Island. The petitioners do not complain that DEP refused to take any enforcement action; rather, they complain that DEP's action did not go far enough. This goes to the essence of prosecutorial discretion: agencies have a great deal of discretion when it comes to enforcement of the laws under their jurisdiction. *See, e.g., Lindemann v. Comm'n on Governmental Ethics & Election Practices*, 2008 ME 187, ¶ 17, 961 A.2d 538; *Herrle v. Town of Waterboro*, 2001 ME 1, ¶¶ 10-11, 763 A.2d 1159. As a matter of policy, an agency's chosen level of enforcement may be more or less than that which is sought, but our review must give deference to the agency so long as its action is supported by substantial evidence in the record. Contrary to FIWN's argument, DEP's decision to enter into an agreed upon order rather than push for further conditions was supported by substantial record evidence and was within the agency's discretion.

C.    First Amendment Retaliation

[¶26]  FIWN claims that the issuance of the CCO was an act of retaliation by DEP against the neighbors. In order to establish a claim under 42 U.S.C.A. § 1983, "the claimant must show a deprivation of a right secured by federal law, statutory or constitutional, and that the deprivation was achieved under color of state law." *Wyman v. Sec'y of State,* 625 A.2d 307, 310 (Me. 1993). FIWN argues

that the court erred by dismissing its First Amendment retaliation claim, pursued as an independent claim in the Rule 80C proceedings. We review constitutional issues de novo. *Light v. D'Amato*, 2014 ME 134, ¶ 17, 105 A.3d 447.

[¶27] To establish a First Amendment retaliation claim, FIWN must show that: "(1) [it] engaged in constitutionally protected conduct, (2) [it] was subjected to an adverse action by [DEP], and (3) the protected conduct was a substantial motivating factor in the adverse action." *D.B. v. Esposito,* 675 F.3d 26, 43 (1st Cir. 2012). The parties agree that FIWN engaged in constitutionally protected conduct when it complained to DEP about the excessive noise. FIWN's claim fails, however, because there was no adverse action taken by DEP against FIWN that would deter the latter from further exercising its constitutional rights. *Id.* at 44 n.11. The CCO is binding on Fox Island, not on FIWN. It does not require FIWN to take or refrain from taking any particular action or otherwise divest FIWN of any right or privilege established by law. FIWN and the individuals who make up the group continue to have the unfettered right to petition DEP to respond to noise violations or any other alleged violation of DEP standards by Fox Island.

The entry is:

> Judgment vacated. Remanded to the Superior
> Court for dismissal of the complaint.

**On the briefs:**

Janet T. Mills, Attorney General, and Gerald D. Reid, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellants Department of Environmental Protection and Patricia Aho

Catherine R. Connors, Esq., and Nolan L. Reichl, Esq., Pierce Atwood LLP, Portland, for appellant Fox Islands Wind, LLC

Rufus E. Brown, Esq., Brown & Burke, Portland, for cross-appellants Fox Islands Wind Neighbors, et al.

David G. Webbert, Esq., and Roberta L. de Araujo, Esq., Johnson, Webbert & Young, LLP, Augusta, for amicus curiae Maine Employment Lawyers Association

Zachary L. Heiden, Esq., American Civil Liberties Union of Maine, Portland, for amicus curiae American Civil Liberties Union of Maine

**At oral argument:**

Gerald D. Reid, Asst. Atty. Gen., for appellants Department of Environmental Protection and Patricia Aho

Catherine R. Connors, Esq., for appellant Fox Islands Wind, LLC

Rufus Brown, Esq., for cross-appellants Fox Islands Wind Neighbors, et al.

Kennebec County Superior Court docket number AP-2011-42
FOR CLERK REFERENCE ONLY