MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions

Decision:       2025 ME 25
Docket:         Sag-24-5
Submitted
  On Briefs:   November 25, 2024
Decided:       March 11, 2025

Panel:         STANFILL, C.J., and HORTON, CONNORS, and DOUGLAS, JJ.

STEPHEN A. CLARK JR. et al.

v.

TOWN OF PHIPPSBURG et al.

CONNORS, J.

[¶1]   This appeal pursuant to Maine Rule of Civil Procedure 80B addresses the relationship among the roles of a code enforcement officer, a board of appeals, and a select board in enforcing a land use ordinance.

[¶2]   Juanita and Stephen Clark, Linda and Cliff Trebilcock, and Dan Gurney reside at neighboring properties on Fuller Mountain Road in the Town of Phippsburg.[1]  Gurney sells firewood from his property and has done so for thirty years.  In September 2020, the Clarks and the Trebilcocks complained to the Town's Code Enforcement Officer (CEO) that Gurney's firewood business constituted a nuisance in violation of the home business provision of the

---

[1] The Trebilcocks' property abuts Gurney's property, and the Clarks' property is across the street from Gurney's property.

2

Town's Land Use Ordinance (LUO).[2] The matter proceeded from the CEO to the Board of Appeals (BOA), which found that the firewood business constituted a nuisance in violation of the LUO. *See* Phippsburg, Me., Land Use Ordinance § 9(L)(2)(c) (Nov. 6, 2012). The Board of Selectmen (BOS) subsequently issued its own findings of fact finding that Gurney had abated the nuisance. The Clarks and the Trebilcocks challenged that decision in a complaint for judicial review pursuant to M.R. Civ. P. 80B, and the Superior Court (Sagadahoc County, *Billings, J.*) affirmed. The Clarks now appeal that judgment, arguing that the BOS did not have the authority to conduct a de novo review and make findings of fact and that the Superior Court erred in determining that there was insufficient evidence of due process violations by the BOS. The Clarks further argue that the court erred when it determined that the BOA decision was outside the scope of their appeal.

[¶3] We conclude that the BOA findings are outside the scope of this appeal but that the BOS exceeded its authority and violated due process in its review. We therefore vacate the judgment and remand to the Superior Court

---

[2] The relevant section of the LUO provides that, as to home businesses, "[n]o unreasonable nuisance, traffic congestion, waste discharge, offensive noise, vibration, smoke, dust, odors, heat, glare or radiation shall be generated." Phippsburg, Me., Land Use Ordinance § 9(L)(2)(c) (Nov. 6, 2012).

with instructions to remand to the BOS for new proceedings without the participation of Chair Julia House.

## I. BACKGROUND

### A. The Initial Complaint

[¶4] In September 2020, the Clarks and the Trebilcocks filed a complaint with the CEO against Gurney alleging that Gurney's firewood business was not an allowable home business under the applicable LUO and that Gurney's business constituted a nuisance in violation of the home business provision of the LUO because it generated excessive noise and smoke. The Clarks and the Trebilcocks requested that the CEO order Gurney to cease operation of his business until he had applied for and obtained a business permit. In November 2020, the CEO wrote a letter to the Clarks and the Trebilcocks denying their request and stating that he had found that Gurney did not violate the LUO.[3]

[¶5] The Clarks and the Trebilcocks appealed from the CEO's decision to the BOA in December 2020, requesting that the BOA hold a de novo hearing. *See* Phippsburg, Me., Board of Appeals Ordinance § IV(A)(4)(b), (d)

---

[3] In the denial letter, the CEO stated, "I cannot determine that Mr. Gurney did not qualify as a home business or that he was in violation of the ordinance at the time he moved to the Fuller Mountain Road location. He has been in business at that location for the past 28 years. He has been a vendor for the Town providing firewood through the general assistance program. The Town was fully aware and recognized the business being conducted and has never questioned the legality of it. During my time as the code officer there has not been any increase in the size or scope of the business . . . that would have required Mr. Gurney to be reviewed by the Planning Board for a business permit."

4

(June 12, 2020) (providing for de novo BOA review of CEO decisions that do not "require abutter notification or a public hearing"); *see also* 30-A M.R.S. § 2691(4) (2024) ("Absent an express provision in a charter or ordinance that certain decisions of its code enforcement officer or board of appeals are only advisory or may not be appealed, a notice of violation or an enforcement order by a code enforcement officer under a land use ordinance is reviewable on appeal by the board of appeals . . . .").

[¶6]  The BOA conducted a de novo review and found that the firewood business was a "grandfathered use" for which Gurney did not need a permit because he had moved onto his property in 1991 and the LUO in effect at the time did not require a permit for home businesses.  But the BOA also found that Gurney's business violated the home business nuisance provision of the LUO because it generated offensive noise and smoke pollution, and it directed the CEO to work with the parties to achieve a consent agreement to abate the nuisance.[4]

---

[4]  The relevant portion of the BOA decision stated that it had concluded that "there is some violation as . . . alleged . . . because of the evidence presented showing that Mr. Gurney's firewood business is causing offensive noise and smoke pollution to Appellants.  As a result of that finding the [BOA] instructs the [CEO] to investigate the Appellants' nuisance/noise/smoke complaint and to initiate the process of reaching a consensual agreement with the parties that will address the findings of the investigation."

[¶7]  The BOA's decision, dated March 22, 2021, noted that any aggrieved person who had participated as a party during the proceedings could take an appeal to the Superior Court within forty-five days after the date of the decision, but no person took such an appeal within that period.

[¶8]  In April 2021, the CEO sent a letter to the parties requesting their input regarding the consent agreement, then drafted a consent agreement and shared it with the parties in June 2021.  The draft agreement provided for specific hours of operation of Gurney's business, a setback between Gurney's property line and all business operations, and compliance with all relevant fire regulations.  The CEO circulated a final draft of the proposed consent agreement on August 3, 2021, and informed Gurney that he would have to sign the agreement by August 17, 2021, at 5:00 p.m.; if Gurney did not do so, the CEO would issue a notice of violation and cease-and-desist order (NOV).[5]

---

[5] The LUO provides in relevant part:

> It shall be the duty of the CEO to enforce the provisions of this Ordinance. If the CEO shall find that any provision of this Ordinance is being violated, the CEO shall notify in writing the person responsible for such violation, indicating the nature of the violation and ordering the action necessary to correct it, including discontinuance of illegal use of land, buildings or structures, or work being done, removal of illegal buildings or structures, and abatement of nuisance conditions. A copy of such notices shall be submitted to the Board of Selectmen and be maintained as a permanent record.

Phippsburg, Me., Land Use Ordinance § 12(I)(2)(a).

6

[¶9]  Gurney did not sign the consent agreement by the deadline, and the CEO issued an NOV on August 17, 2021.  The NOV provided, "At this time, you are required to stop all activity associated with your wood business at your residence at 30 Fuller Mountain Road until such time as you apply for and receive all permits required for the business.  Continued operation of this business contrary to this Order can result in legal action including fines and penalties."

[¶10]  Juanita Clark later reported to the CEO and the Town's attorney that Gurney continued to operate the firewood business in violation of the NOV, and the attorney responded that she had passed the complaint on to BOS Chair Julie House.[6]

---

[6]  The LUO provides that when the CEO has issued the notification of a violation and the action does not result in the correction or abatement of the violation or nuisance condition, the BOS, upon notice from the CEO, "is hereby directed to institute any and all actions and proceedings, either legal or equitable, including seeking injunctions of violations and the imposition of fines, that may be appropriate or necessary to enforce the provisions of this Ordinance in the name of The Town of Phippsburg.  The Board of Selectmen, or its authorized agent, is hereby authorized to enter into administrative consent agreements for the purpose of eliminating violations of this Ordinance and recovering fines without Court action.  Such agreements shall not allow an illegal structure or use to continue unless there is clear and convincing evidence that the illegal structure or use was constructed or conducted as a direct result of erroneous advice given by an authorized Town official and there is no evidence that the owner acted in bad faith, or unless the removal of the structure, or use will result in a threat or hazard to public health and safety, or will result in substantial environmental damage."  Phippsburg, Me., Land Use Ordinance § 12(I)(3)(a).

## B.  Proceedings Before the BOS

[¶11]  The BOS discussed the matter at its September 1, 2021, meeting and took evidence regarding whether Gurney had abated the nuisance.  Gurney reported that he had voluntarily started sawing wood at 7:00 a.m., not 6:00 a.m., but also stated that he would not agree to regular hours of operation. He also reported that he had moved his wood-splitter back farther from the property line and purchased a decibel meter so that he could monitor the volume of the machinery he was operating.

[¶12]  Juanita Clark objected to the procedure that the BOS was using by allowing Gurney to present new evidence, to which Chair House replied, "This is my meeting, and I'm gonna allow anybody to speak that I wish."  Chair House also said, "You have to understand that if we come up with an agreement like this, this is going to blow up all over town" and stated, "I spoke to Mr. Gurney and I said, 'If I was you, I wouldn't sign [the consent agreement] because I'm not signing that myself.'"

[¶13]  On September 8, 2021, the Clarks and the Trebilcocks wrote to the Town attorney, objecting to the proceeding and requesting that Chair House recuse herself.  The Clarks and the Trebilcocks alleged that Chair House had exhibited bias in favor of Gurney and listed eight facts and circumstances that

8

they claimed supported their allegation, including (1) that her "demeanor towards [the Clarks and the Trebilcocks] was adversarial at the outset of [the September 1] meeting while at the same time giving wide latitude to Gurney and his witnesses and at every opportunity doing her best to minimize anything [the Clarks and the Trebilcocks] had to say"; (2) that "House provided Gurney counsel by instructing him not to sign the consent agreement prepared by the CEO and the Town's own attorney"; and (3) that "House's father Jimma Totman was in attendance at this meeting and at one point said that if the Selectmen enforced the order there was going to be hell to pay."

[¶14]   The BOS conducted a site visit of Gurney's property on September 13, 2021.  The next day, Gurney filed a document with the BOA on a form entitled "Board of Appeals Application," stating that he disagreed "with the board[']s findings and request[ing] that the board hold an on site inspection of my wood yard as soon as possible."  Gurney submitted a revised application with the BOA again requesting that it come to his property so that he could show them that he had "complied with there [*sic*] finding of 02-23-2021 that [his] wood cutting is legal."

[¶15]  At its September 15, 2021, meeting, the BOS tabled discussion of the matter until Gurney's application to the BOA was resolved or no longer

pending. At its September 22, 2021, meeting the BOS again tabled discussion of this case while Gurney clarified his application before the BOA.

[¶16] The record submitted to us indicates that the BOA, after consulting with the Town attorney, and referencing Gurney's submission as an "appeal application," rejected the filing as both incomplete and falling outside the valid scope of the BOA's authority, so that no further proceedings would be held before the BOA on the matter. The BOA Chair wrote in an email to the Town administrator that the BOS could "either choose to enforce the appeals decision of 2/23/21 or . . . not. The next step is court."

[¶17] At its September 29, 2021, meeting, the BOS members discussed what to do with this "unusual case." BOS Member Sue Levene asked for Chair House's permission to ask Gurney some questions, which Chair House granted. Levene asked Gurney if there was anything the BOS could do short of going to court to get Gurney to follow the CEO's direction to cease operating his business and apply for a business permit to continue to operate. Gurney questioned why he would have to apply for a permit after thirty years of operating his business and stated that he would not sign a consent agreement. When asked whether he would propose an alternative consent agreement, Gurney replied, "No, I

don't want to sign anything.  Would I be the only one in town that would sign an agreement to work? . . . . This town hall would be full tomorrow."

[¶18]  At this point, Levene expressed concern to her fellow BOS members: "I don't think we should set a precedent that ignoring the decisions of our [CEO] and [BOA] are rewarded with the ability to continue actions in violation of our ordinances."  She added, "My preference today is to make a decision that we authorize our lawyer to file this lawsuit but also give [Gurney] one more chance to work with [the CEO] to come up with a consent agreement that [Gurney] is willing to sign that [the CEO] agrees abates the violation.  If he can't do that, I don't see any other option but to go to court unless you guys do."

[¶19]  Chair House echoed Gurney's remarks about the effect a decision like this would have on other workers in Phippsburg: "My concern is the precedent it will set if we sign a consent agreement about hours of operation; that will blow up around town, between contractors, we have quite a few in town.  If it gets to the fishing, it goes against our comp plan because in the comp plan we support the fishing industry."

[¶20]  Board Member Mixon stated that although he had not seen Gurney's property prior to the site visit, he believed based on the site visit that Gurney had abated the nuisance.  Levene responded, "My concern about your

opinion is we can't override the opinion of the CEO. If [the CEO] agrees with you, I would be on board with that, but I can't agree with you if [the CEO] doesn't agree; if he doesn't agree, I would worry we're putting liability on our town because we're overstepping [our authority]."

[¶21] Chair House stated that she had consulted with the Town's attorney and that the attorney had stated that "it's completely up to us how we go from here." Mixon made a motion to the effect that the current configuration of Gurney's property had addressed the violation as outlined in the LUO provision pertaining to home businesses, *see* Phippsburg, Me., Land Use Ordinance § 9(L)(2)(c), and the BOS passed this motion favorably with two in favor (House and Mixon) and one opposed (Levene).

[¶22] Stephen Clark asked the BOS to clarify whether the motion they had just passed rescinded the CEO's notice of violation, and Chair House replied in the affirmative. Chair House further stated that Gurney would have to continue to work within reasonable hours and work in the new configuration that he claimed to have set up. Juanita Clark renewed the request for Chair House to recuse herself due to a conflict of interest, to which Chair House replied that she did not have a conflict of interest because if she had a conflict of interest in this case, she would have to step down because she would be

12

conflicted out of every case. The BOS then voted favorably by a vote of two (House and Mixon) to one (Levene) to rescind the notice of violation.

## C. Rule 80B Appeal

[¶23] The Clarks and the Trebilcocks filed with the Superior Court (Sagadahoc County, *Billings, J.*) an appeal pursuant to M.R. Civ. P. 80B for judicial review of the Town's action. The court remanded the matter to the BOS to issue written findings of fact "tethered to a reviewable record," citing *LaMarre v. Town of China*, 2021 ME 45, ¶ 10, 259 A.3d 764.

[¶24] The BOS then issued written findings of fact. Notably, the BOS did not impose conditions on Gurney for the continued operation of his business. Rather, based on Gurney's report that he had changed the configuration of his business, the BOS concluded, "Gurney abated the nuisance found by the BOA on March 22, 2021." The court denied the Clarks and the Trebilcocks' 80B appeal and affirmed the BOS's decision. The Clarks[7] timely appealed to us. *See* M.R. Civ. P. 80B(n); M.R. App. 2B(c)(1).

---

[7] The Trebilcocks did not appeal the most recent Superior Court decision.

## II. DISCUSSION

### A. The BOA decision cannot be collaterally attacked in this appeal.

[¶25] The BOA's finding of a nuisance is unassailable in this appeal. BOA decisions that comply with due process requirements that are not timely appealed to the Superior Court are "subject to the same preclusive effect as otherwise provided by law." 30-A M.R.S. § 2691(4). *See Portland Co. v. City of Portland*, 2009 ME 98, ¶ 22, 979 A.2d 1279 ("Under the doctrine of res judicata, a party and its privies are barred from relitigating claims or issues that have already been decided.").

[¶26] The March 22, 2021, BOA decision was a final judgment, and no 80B petition seeking review of the BOA's decision was filed within the time limit. Although the Clarks argue that they were following up on the instruction to pursue a consent agreement, this is not a basis for failing to meet the deadline to appeal under Rule 80B. Nothing prevented the Clarks from pursuing the consent agreement while also pursuing an appeal. *See* M.R. Civ. P. 80B(b) (providing that "[t]he time within which review may be sought shall be as provided by statute, except that if no time limit is specified by statute, the complaint shall be filed within 30 days after notice of any action or refusal to act of which review is sought unless the court enlarges the time"); *Tominsky v.*

*Ogunquit*, 2023 ME 30, ¶¶ 29, 31, 34, 294 A.3d 142 (concluding that an 80B appeal was untimely and did not meet the good cause exception under the applicable ordinance and noting that "in determining whether excusable neglect exists, the standard is strict, and extensions of time should be limited to extraordinary cases" (quotation marks omitted)).

## B. The BOS exceeded its authority and violated procedural due process requirements.

[¶27]  The next questions go to the proper scope of the BOS's review, whether that scope was exceeded, and whether the review complied with due process requirements.[8]

[¶28]  The Clarks argue that the BOS lacked the authority to review the BOA's findings and that to do so contravened 30-A M.R.S. § 2691(4), which sets forth the authority of a board of appeals.  But the question before us is not whether there was ever a nuisance as found by the BOA.  As noted above, that

---

[8]  The Town also argues that the Superior Court lacked jurisdiction to review the BOS's decision to take no enforcement action against Gurney.  Generally speaking, prosecutorial decisions not to enforce are unreviewable by the court.  *See Salisbury v. Town of Bar Harbor*, 2002 ME 13, ¶ 11, 788 A.2d 598.  Here, however, the BOS did not simply decline to enforce; rather, purporting to adhere to a process provided for in the LUO, the BOS issued a reviewable decision that the nuisance violation had been abated so that there was no violation.  *Cf. Fox Islands Wind Neighbors v. Dep't of Env't Prot.*, 2015 ME 53, ¶¶ 11-20, 116 A.3d 940 (concluding that an agency's compliance conclusion was a reviewable aspect of an enforcement action); *29 McKown LLC v. Town of Boothbay Harbor*, 2022 ME 38, ¶ 7 n.4, 277 A.3d 364 ("[A] regulatory decision finding that original permitting standards were not violated is itself an enforcement action that is judicially reviewable." (citing *Fox Islands*, 2015 ME 53, ¶¶ 5, 17, 19-20, 116 A.3d 940)).

BOA finding cannot be collaterally attacked. Instead, the question is whether the BOS exceeded its authority under the LUO by deciding that the nuisance had been abated.[9] To answer this question, we look to the contents of the LUO.

[¶29] "The interpretation of an ordinance is a question of law that we review de novo, with no deference to the local board's interpretation. We construe the terms of an ordinance reasonably, considering its purposes and structure and to avoid absurd or illogical results . . . ." *Stiff v. Town of Belgrade*, 2024 ME 68, ¶ 12, 322 A.3d 1167 (citations and quotation marks omitted).

[¶30] Consistent with the name "code 'enforcement' officer," the LUO provides that "[i]t shall be the duty of the CEO to enforce the provisions of this Ordinance." *See generally Shafmaster v. Town of Kittery*, 469 A.2d 848, 850 (Me. 1984) (noting that nothing in an ordinance with similar language indicated that the code enforcement officer was relieved of his or her responsibility to ensure conformity with zoning requirements); 30-A M.R.S. § 4451(2-A) (2024) (defining code enforcement officer as a person "employed by a municipality to enforce all applicable laws and ordinances" in areas including land use); Arden H. Rathkopf et al., 4 Rathkopf's The Law of Zoning

---

[9] The Clarks also argue that that the record does not support the BOS's findings that the nuisance had been abated. Because we conclude that the BOS exceeded its authority in addressing this question, we need not reach the issue.

and Planning § 65:8 (4th ed. 2024) ("The duty of enforcement on behalf of and by the municipality is generally delegated to the building inspector or to an officer specifically charged with the administration of the zoning ordinance alone."). Thus, in Phippsburg, as elsewhere, the CEO determines whether there has been a violation and issues notices of violation to enforce the LUO. *See, e.g.*, *City of Lewiston v. Verrinder*, 2022 ME 29, ¶ 3, 275 A.3d 327.

[¶31] A decision by a code enforcement officer as to whether a violation exists is typically, and specifically in Phippsburg, reviewable by the board of appeals.[10] Nothing in any statute or the LUO provides that the BOS has authority to review the CEO's decision.

[¶32] The LUO provides that once the CEO issues a notice of a violation and that notice "does not result in the correction or abatement of the violation or nuisance condition," the BOS, "upon notice from the CEO, is hereby directed to institute any and all actions and proceedings . . . that may be appropriate or necessary to enforce the provisions of this Ordinance in the name of The Town

---

[10] After we initially ruled that the existing statutory framework did not provide for review of a violation determination by a board of appeals, see *Herrle v. Town of Waterboro*, 2001 ME 1, ¶ 8, 763 A.2d 1159, the statute was amended to make clear that a notice of violation by a code enforcement officer "is reviewable on appeal by the board of appeals and in turn by the Superior Court" under Rule 80B, P.L. 2013, ch. 144, § 1 (effective Oct. 9, 2013) (codified at 30-A M.R.S. § 2691(4) (2024)), and we overruled *Herrle* in *Raposa v. Town of York*, 2019 ME 29, ¶ 8, 204 A.3d 129. Thus, in Phippsburg, the CEO's initial decision here was, pursuant to statute and the LUO, properly reviewed by the BOA, which could then be further reviewed in court.

of Phippsburg." Phippsburg, Me., Land Use Ordinance § 12(I)(3)(a). Thus, under this language, the CEO notifies the BOS that the nuisance has not been abated. The CEO makes that determination, which is reviewable only by the BOA.

[¶33] From the record, it appears that Gurney attempted to appeal the NOV to the BOA and that appeal was rejected on procedural grounds, including that it was incomplete. We need not review whether the BOA's decision was correct because no one appealed that decision to court.

[¶34] Instead of the BOA reviewing the CEO's decision consistent with section 2691(4), the BOS engaged in a review pursuant to the LUO provisions regarding its role with respect to consent agreements. Generally speaking, select boards decide whether the municipality should go to court to stop a violation. *See Pepperman v. Town of Rangeley*, 659 A.2d 280, 282 (Me. 1995) ("If the CEO continued to believe that Pepperman was in violation of the ordinance . . . she would notify the municipal officers of the violation and recommend that they institute an enforcement action on behalf of the Town."); *see also* 30-A M.R.S. § 4452(4) (2024) ("All proceedings arising under locally administered laws and ordinances shall be brought in the name of the municipality."); *Pike Indus., Inc. v. City of Westbrook*, 2012 ME 78, ¶¶ 18, 23-25,

45 A.3d 707 (explaining that, at least once a dispute is in court, "a municipal government" has the authority to compromise on disputed claims through consent agreements, but such agreements must, inter alia, not violate the constitution, nor a statute or other authority, and must be consistent with zoning-related public policy considerations including the uniform applicability and enforcement of zoning ordinances; such agreements cannot effectively amend ordinance requirements for the party subject to the agreement).

[¶35]  Within this division of responsibilities pursuant to which the CEO, subject to review by the BOA, decides whether a violation exists or persists, and the BOS decides whether to enforce a CEO-issued notice of violation in court, the specific language in the LUO regarding the BOS's authority with respect to consent agreements appears to limit the BOS's prosecutorial discretion.  The LUO language "direct[s]" the BOS to take all actions necessary or appropriate to enforce the NOV, and it prohibits entry of consent agreements that do not meet the prescribed limits set forth in the LUO.  Phippsburg, Me., Land Use Ordinance § 12(I)(3)(a).

[¶36]  Consistently with the language of the LUO, the CEO told Gurney what he needed to do in order to abate the nuisance.  The CEO provided Gurney with a draft consent agreement that provided specifics as to what Gurney

needed to do; warned him that if he did not sign the agreement he would be in violation; and then issued the NOV that stated that he was in violation. When the matter was brought to the BOS, under the language of the LUO, the BOS's role was not to decide whether the nuisance had been abated, but rather whether a consent agreement within the parameters set by the LUO could achieve abatement of the violation instead of court action.

[¶37] The BOS proceeding was defective not only because the BOS exceeded its authority by reviewing whether the nuisance had been abated but in two other respects. First, on this record, it does not appear that a consent agreement could be achieved when Gurney flatly refused to enter any consent agreement. Second, the BOS proceeding was fatally infected by the Chair's conduct. Chair House repeatedly made remarks that gave the appearance of pre-judgment and bias, including statements dismissing the Clarks' concerns that only Gurney had been allowed to present new evidence and that they were not being heard. She accepted Gurney's refusal to come to an agreement as to the hours of operation of his business because of the imagined impact that such an agreement might have on other businesses in the town, although only Gurney's business was at issue in this matter. *See O'Toole v. City of Portland*, 2004 ME 130, ¶ 22, 865 A.2d 555 (stating that although a board may consider

the precedential implications of their decision, this "cannot substitute for a decision based exclusively on the requirements of the ordinance"). Most concerningly, Chair House stated during the September 1, 2021, BOS meeting that she had advised Gurney ex parte not to sign the consent agreement that the CEO proposed: "I spoke to Mr. Gurney and I said, 'If I was you, I wouldn't sign [the consent agreement] because I'm not signing that myself.'" *See Mutton Hill Ests., Inc. v. Town of Oakland*, 468 A.2d 989, 992 (Me. 1983) (concluding due process was violated due to ex parte communications).

[¶38] To summarize, the NOV was not appealed and is final. That NOV set out the steps that Gurney must take to cease the violation. Under the specific language of the LUO, the BOS "is directed" to decide whether those steps can be achieved through a consent agreement or whether it is necessary to institute court action against Gurney to enforce the ordinance. Phippsburg, Me., Land Use Ordinance § 12(I)(3)(a). We therefore remand for the BOS to make such a determination without the participation of Chair House.

The entry is:

> Judgment vacated. Remanded to the Superior Court with instructions to remand to the Board of Selectmen to hold another hearing, consistent with this opinion, without Chair Julia House.

Stephen A. Clark, Jr. and Juanita Clark, appellants pro se

Mark V. Franco, Esq., and Oliver Mac Walton, Esq., Drummond Woodsum, Portland, for appellee Town of Phippsburg

Sagadahoc County Superior Court docket numbers AP-2021-4 and AP-2023-4
FOR CLERK REFERENCE ONLY