STATE OF MAINE
PENOBSCOT, ss

SUPERIOR COURT
Civil Action
Docket No. AP-20-0006

Michael E. Storie,

David B. Storie, and

Jay T. Storie,

Petitioners/Plaintiffs,

v.

Land Use Planning Commission,

Respondent,

David Cox,

Ashley Cox, and

Ronald Gerard,

Defendants.

**ORDER on**

**Motions to Dismiss Counts I, II and VI,**

**Motion to Specify the Future Course of Proceedings,**

**Motion to Sever,**

**Motion to Amend, and**

**Scheduling Order**

After many false starts, this matter came before the Court on July 26, 2021 for a remote hearing on the pending motions. Patrick Hunt, Esq. appeared for the Plaintiffs. AAG Elwell appeared for the Land Use Planning Commission (LUPC); Daniel Nelson, Esq. appeared for the Coxes; and Charles Cox, Esq. appeared for Ronald Gerard.

This case involves real estate located in Mt. Chase Township, Maine. Before the Court are four motions:

1. The LUPC's motion to dismiss Counts I, II, and VI of the Stories' 80C petition and complaint, joined by the Coxes, and joined by Gerard as to Counts II and VI;
2. The Stories' motion to specify the future course of proceedings pursuant to M.R. Civ. P. 80C(i), resulting in a Scheduling Order;
3. LUPC's motion to sever; and
4. The Stories' unspecified motion to amend their complaint.

1

## I. Background

The LUPC is a state government agency within the Department of Agriculture, Conservation and Forestry. It is charged with implementing certain land use statutes and effectively acts as a zoning and planning board for the unorganized and deorganized areas in the State. *See* 12 M.R.S. §§ 683-A to 685-B (2020). To implement Maine's land use statutes regarding these areas, the LUPC prescribes various land use regulations and rules to govern the public's usage of the land the LUPC administers. 12 M.R.S. § 685-B. One of the conservation statutes the LUPC implements provides that no person may erect or alter structures in the areas under the LUPC's administration without a permit from the LUPC. 12 M.R.S. § 683-B.

The Stories' complaint/petition[1] makes the following allegations:

- Michael Storie, David Storie, and Jay Storie are brothers who own a parcel of land in Mt. Chase Township. (Pl.'s Compl. ¶ 1.) David Cox and Ashley Cox own property that abuts the Stories' property. (*Id.* ¶ 2.) The Coxes acquired the abutting property from Ronald Gerard. (*Id.*) The Stories allege that the land Gerard sold to the Coxes is part of a larger parcel that Gerard had wrongfully organized into an illegal subdivision. (*Id.* ¶ 4.)

- Sometime in August 2015, the LUPC issued a building permit to the Coxes to construct a building on their property that abuts the Stories. (*Id.* ¶ 5.) The Stories allege that this permit should not have been issued because the Coxes' property is part of an illegal subdivision and because the Coxes had not met the minimum shoreline frontage requirement to construct the building. (*Id.* ¶ 6.) The Stories assert that, as abutting property owners, they were entitled to notice of the building permit but were not provided such notice. (*Id.* ¶¶ 5, 15.)

- The Coxes began construction sometime after receiving the permit. (*Id.* ¶ 7.) When the Stories noticed the construction, they complained to the LUPC that the Coxes' property was not eligible for a construction permit. (*Id.*) After making their complaints, the Stories remained in contact with the LUPC about their concerns and requested to be notified of any developments. (*Id.* ¶ 8.) The Stories believed that the LUPC was investigating the Stories' concerns and that the LUPC would enforce Maine's land use planning laws by revoking the permit and stopping the construction; however, the LUPC never revoked the Coxes' building permit and construction continued. (*Id.* ¶¶ 8-9.)

- After the Coxes finished construction, they applied for a certificate of compliance for their building, but the LUPC declined to issue the certificate. (*Id.* ¶ 11.) On January 6, 2020, the LUPC issued a notice of violation to the Coxes. (*Id.* ¶ 6.) The LUPC began settlement negotiations with the Coxes regarding their land use violation and reached a proposed settlement agreement. (*Id.* ¶ 12.) The Stories did

---

[1] The Court will refer to this document as the "complaint/petition" or simply as either the "complaint" or "petition." Whatever term is used, the Court is always referring to the same document.

not learn about these settlement negotiations until January 7, 2020 when the Stories were informed that the proposed settlement agreement would be ratified at the LUPC's meeting in February. (*Id.* ¶ 13.) The Stories attempted to intervene in the LUPC's settlement negotiations with the Coxes and requested that the LUPC postpone the settlement ratification until after its February 12, 2020 meeting to allow them time to prepare and present their objections; however, the LUPC declined to postpone its proceedings. (*Id.* ¶ 16.) On February 10, 2020, Plaintiffs submitted a legal memo to the LUPC in opposition to the LUPC's settlement agreement with the Coxes. (*Id.* ¶ 17.) The LUPC ratified the settlement agreement at its February 12, 2020 meeting, "effectively resolving the Notice of Violation and providing the Coxes with a Certificate of Compliance." (*Id.* ¶ 18.)

The Stories filed a six-count complaint based on the above allegations.

- Count I alleges that the Stories were aggrieved by the LUPC's February 12, 2020 decision to ratify the settlement agreement with the Coxes and requests review of the LUPC's decision under M.R. Civ. P. 80C. The Stories seek an order remanding the matter to the LUPC for entry of an order finding that the Coxes violated land use planning law and requiring the Coxes to remove the offending building. Count I is brought against the LUPC and the Coxes, but not against Gerard.
- Count II seeks a declaratory judgment that the Coxes and Gerard violated Maine's land use planning laws, an injunction requiring the Coxes to remove the structure, and an injunction requiring the Coxes and Gerard to correct the illegal subdivision.
- Count III alleges a common law nuisance claim against the Coxes and Gerard.
- Count IV alleges a statutory nuisance claim against the Coxes and Gerard.
- Count V alleges negligence against the Coxes and Gerard.
- Count VI alleges fraudulent misrepresentation against Coxes and Gerard.

## II. Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). On a motion to dismiss for failure to state a claim upon which relief may be granted, the Court does not adjudicate the facts; instead, the Court treats the factual allegations in the complaint as true and evaluates those allegations in the light most favorable to the plaintiff to determine if the complaint sets forth the "elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Argereow v. Weisberg*, 2018 ME 140, ¶ 12, 195 A.3d 1210; *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141. The complaint does not need to "identify the particular legal theories that will be relied upon, but it must describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief." *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823. Thus, a plaintiff may not proceed to litigate a cause of action if the plaintiff's complaint "has failed to allege facts with sufficient particularity so that if true, the facts would satisfy the elements of a cause of action." *America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, 61 A.3d 1249; *Burns*, 2011 ME 61, ¶ 17, 19 A.3d 823. In examining the complaint, the Court is not bound to accept the

complaint's legal conclusions as true; merely reciting the legal elements of a claim is insufficient. *Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, 61 A.3d 1249; *Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 23, 192 A.3d 589; *Seacoast Hangar Condo. II Assoc. v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166. Dismissal will not be granted unless "it appears beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Argereow*, 2018 ME 140, ¶ 12, 195 A.3d 1210; *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993) (a motion to dismiss tests the legal sufficiency of the plaintiff's allegations "not the sufficiency of the evidence the plaintiffs are able to present").

## III. Defendants' Motion to Dismiss

### A. Count I – Petition for Review of Government Action Pursuant to M.R. Civ. P. 80C

In count I of their petition, Petitioners/Plaintiffs ask for judicial review of the LUPC's decision to enter into a particular settlement agreement with the Coxes. Petitioners/Plaintiffs assert count I against LUPC and the Coxes only. The LUPC and Coxes move to dismiss count I on two separate grounds: 1) the appeal is not timely because the Stories, in essence, are asking for review of the LUPC's decision to issue the Coxes a building permit in 2015, and 2) the Stories lack standing to appeal the ratification of the February 12, 2020 settlement agreement between the LUPC and the Coxes.

*Timeliness of the Appeal*

The LUPC and Coxes' first argument is based upon the filing deadline set forth in the Administrative Procedure Act (APA), 5 M.R.S. §§ 11001-11008 (2020). They argue that the petition is untimely under § 11002(3) and that therefore the Court lacks subject matter jurisdiction over the petition and must dismiss it pursuant to M.R. Civ. P. 12(b)(1).

The time limits set forth in the APA are jurisdictional. *Mutty v. Dep't of Corr.*, 2017 ME 7, ¶ 8, 153 A.3d 775. Pursuant to § 11002(3) of the APA, a person who is aggrieved by the agency action but is not a party to the proceeding, must file his or her petition for review within "40 days from the date the decision was rendered." 5 M.R.S. § 11002(3). If the petition is not timely filed, the Court lacks subject matter jurisdiction and must dismiss the case. *Mutty v. Dep't of Corr.*, 2017 ME 7, ¶ 8, 153 A.3d 775. When reviewing a motion to dismiss an 80C petition for lack of subject matter jurisdiction, the Court does not accept the material facts of the complaint as true and "makes no favorable inferences in favor of the plaintiff" as it would when examining a motion to dismiss for failure to state a claim upon which relief may be granted. *Mutty*, 2017 ME 7, ¶ 8, 153 A.3d 775; *Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 9, 962 A.2d 335; *Francis v. Dana-Cummings*, 2004 ME 4, ¶ 17, 840 A.2d 708 ("[c]ourts are not required to deem allegations in a complaint as admitted when determining whether subject matter jurisdiction exists.") When ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court considers the pleadings and "any material outside the pleadings submitted by the pleader and the movant." *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 17 n.5, 879 A.2d 1007; *Davric Maine Corp. v. Bangor Historic Track, Inc.*, 2000 ME 102, ¶ 6, 751 A.2d 1024.

4

There is no question that the Stories did not appeal the LUPC's issuance of the building permit in 2015.[2] There is also no question that the Stories filed an appeal within 40 days of the ratification of the settlement agreement in 2020. The question posed by the motion to dismiss is whether the Stories' 80C petition is an appeal of the ratification of the settlement agreement or is, in essence, an appeal of the granting of the permit. If the petition is properly considered an appeal of the granting of the permit, then the petition is untimely. However, if it is considered an appeal of the February 12, 2020 settlement agreement, the petition is timely.

The LUPC argues that the Court should consider the date on which the LUPC's staff issued the 2015 building permit to the Coxes as the operative date for purposes of the filing deadline. (The exact date of that issuance is uncertain, but clearly the permit was issued sometime between August 18 and August 31, 2015.) The LUPC contends that the Stories' 80C petition seeks review of the February 12, 2020 ratification of the settlement agreement solely on the basis that the LUPC's staff's decision to issue the 2015 building permit to the Coxes was in error and that, in substance, the Stories' 80C petition is "nothing more than a belated attempt" to appeal that permit decision. (Mot. Dismiss 7.) The LUPC reasons that because the Stories did not file a petition within 40 days of the issuance of that 2015 permit, the Stories' petition is untimely under § 11002(3), and therefore the Court lacks subject matter jurisdiction over the petition.

To support its position, the LUPC relies on *Juliano v. Town of Poland*, 1999 ME 42, ¶¶ 7-8, 725 A.2d 545, which concerned the timeliness of an appeal brought to the Town of Poland's Board of Appeals pursuant to the procedural rules set forth in the Town's zoning ordinance. In 1995, the Town's Code Enforcement Officer (CEO) issued Juliano a building permit to expand his small commercial bottling plant. However, in 1997, a new CEO ordered Juliano to cease construction because he did not have a valid building permit. Juliano appealed the stop work order to the Town's Board of Appeals. The Board upheld the stop work order on the grounds that Juliano's building permit was invalid. The Town's zoning ordinance required that an appeal from the decision of CEO to the Town's Board of Appeals must be brought within thirty days of the CEO's decision. The Law Court determined that the 1997 stop work order was an appeal from the former CEO's decision to issue the permit in 1995. Because the stop work order (i.e. appeal) "was issued nearly two years after the permit was granted," the Law Court determined that the stop work order "was not timely due to the thirty-day appeal period specified in the ordinance." *Id.* ¶ 7. In its analysis, the Law Court emphasized that "strict compliance with the appeal procedure of an ordinance is necessary to ensure that once an individual obtains a building permit, he can rely on that permit with confidence that it will not be revoked after he has commenced construction." *Id.* ¶ 7 (internal citation omitted).

The LUPC also points to *Salisbury v. Town of Bar Harbor*, 2002 ME 13, 788 A.2d 598, as additional support. Salisbury was issued a building permit by the Town of Bar Harbor to demolish and reconstruct a residence on his land with the same footprint as the existing

---

[2] The Stories allege they were not notified when the permit was granted, but there is no indication that they asked for an extension of the filing deadline or a stay of the decision to issue the permit.

structure. After construction began, the CEO issued a stop work order but then revoked the order a month later. The Utsches, neighboring property owners, challenged the revocation. During that litigation, the CEO issued Salisbury a certificate of occupancy. Thereafter, the Town's Board of Appeals determined that the stop work order was wrongfully revoked and the CEO wrongfully issued the certificate of occupancy. Salisbury then filed an 80B action arguing in part that the Board of Appeals lacked jurisdiction to review the CEO's decision to issue the certificate of occupancy. The Law Court held that the "issuance or denial of a certificate of occupancy is a decision subject to judicial review" and that, as the Utsches had timely appealed that issuance, the Board had jurisdiction to consider the appeal. *Id.* ¶ 13. The Law Court also held that the Board acted within its authority when it reviewed the Utsches allegation that Salisbury exceeded the scope of the building permit. The Law Court noted that "an appeal of a certificate of occupancy may not . . . substitute for an appeal of the underlying permit" but if the permittee has "meaningfully exceeded the authority contained in the permit, or otherwise violated conditions of the permit, the issuance of the certificate of occupancy may be challenged." *Id.* ¶ 14. The Law Court determined that the Board of Appeals made findings regarding whether Salisbury exceeded the bounds of the building permit and therefore the Board acted within its authority to review the issuance of the certificate of occupancy. *Id.* ¶ 15.

Turning to the issue presented in this case, the key section of the Stories' complaint states:

> At the February 12, 2020 LUPC meeting, the LUPC ratified the Settlement Agreement with David Cox and Ashley Cox, effectively resolving the Notice of Violation and providing the Coxes with a Certificate of Compliance . . .

> As abutting property owners, Plaintiffs are aggrieved by the February 12, 2020 decision of the LUPC. Without limitation, plaintiffs are aggrieved that LUPC failed to rescind the building permit, entered into a settlement agreement with the Coxes, failed to find a violation and requirement of abatement of the violation, and issued a certificate of compliance for the structure.

(Compl. ¶ 19). While the Court agrees with the LUPC that the Stories' argument against the LUPC's approval of the settlement agreement is based in part on their contention that the Coxes should not have been issued the 2015 building permit in the first place, the Court disagrees that the Stories' 80C petition functions as an appeal of the 2015 building permit.

Count I of the complaint requests review of the LUPC's decision to settle its claims against the Coxes for their land use violations without requiring the Coxes to remove the offending structure. The LUPC's arguments based on the *Juliano* and *Salisbury* decisions are not persuasive because the LUPC's characterization of the complaint as petitioning for review of the issuance of the 2015 building permit is too narrow. When fairly read, the Stories' petition is properly construed as a challenge to the LUPC's decision as to how to enforce the applicable land use rules and regulations (i.e. its ratification of the February 12, 2020 settlement agreement) after it determined that the Coxes had violated those rules and regulations. Because it is clear from the record that the Stories' petition was filed within 40 days of the LUPC's official decision to enter a settlement agreement with the Coxes on February 12, 2020

(the date the settlement agreement was finalized and signed by LUPC), this 80C action is timely under 5 M.R.S. § 11002(3).

The motion to dismiss the Stories' 80C appeal due to the untimeliness of the petition is denied. The hearing on the merits of this petition will be strictly limited to evidence and arguments pertaining to the LUPC's enforcement decision, not to whether the 2015 building permit should have been issued.

*Standing*

The LUPC and the Coxes also argue that count I should be dismissed because the Stories lack standing to appeal the LUPC's decision to settle its claims against the Coxes. Although the LUPC appears to move to dismiss on this ground pursuant to M.R. Civ. P. 12(b)(1) (lack of jurisdiction), Maine courts do not consider standing to sue as a matter of subject matter jurisdiction.[3] Accordingly, the Court will examine the standing aspects of the motions to dismiss count I under Rule 12(b)(6).[4] *See National Hearing Aid Centers, Inc. v. Smith*, 376 A.2d 456, 458 (Me. 1977) ("[i]n determining justiciability we must ascertain whether the complaint alleged a claim of right justifying relief and whether a sufficiently substantial interest is asserted to warrant judicial protection.").

Standing is a threshold requirement to pursue litigation in the courts—the term is used to refer to whether the "party, at the commencement of the litigation, has sufficient personal stake in the controversy to obtain judicial resolution of that controversy." *Halfway House v. City of Portland*, 670 A.2d 1377, 1379 (Me. 1996); *see also Roop v. City of* Belfast, 2007 ME 32, ¶ 7, 915 A.2d 966; *Lindemann v. Comm'n on Governmental Ethics & Election Practices Ethics*, 2008 ME 187, ¶ 8, 961 A.2d 538. In the context of administrative appeals, the right to seek judicial review of an administrative action is governed by statute; thus, "whether a party has standing depends on the wording of the specific statute involved." *Nelson v. Bayroot*, LLC, 2008 ME

---

[3] In the Maine courts, standing to sue is a matter of jurisprudential principle; it is not considered a matter of subject matter jurisdiction like constitutional standing is in the federal courts. *Bank of N.Y. v. Dyer*, 2016 ME 10, ¶¶ 8-9, 130 A.3d 966 (standing is a matter of justiciability not subject matter jurisdiction); *Bank of Am., N.A. v. Greenleaf*, 2015 ME 127, ¶ 7, 124 A.3d 1122 ("although standing relates to the court's subject matter jurisdiction, it is an issue theoretically distinct and conceptually antecedent to the issue of whether the court has subject matter jurisdiction") (internal citations omitted); *Norris Family Assocs. LLC*, 2005 ME 102, ¶ 13, 879 A.2d 1007 (standing to appeal an administrative decision is analyzed separately from subject matter jurisdiction).

[4] The Court will treat the factual allegations of the Stories' petition/complaint as true and view those facts and the reasonable inferences that can be drawn from them in the light favorable to the plaintiff/petitioner for purposes of determining whether the Stories have sufficiently shown that they have standing to sue at this stage of the proceedings. *See e.g. Conservation Law Found. v. LePage*, Cum-CV-18-0089, 2018 Me. Super. LEXIS 156, at *25 (July 20, 2018) ("It is the allegations of the complaints that determine standing for purposes of a Rule 12(b)(6) motion"); *Cedars Nursing Case Ctr. v. Me. HHS*, Cum-AP-15-0021, 2015 Me. Super. LEXIS 147, at *2 (Aug. 24, 2015) (treating the allegations contained in the complaint as true and admitted on a motion to dismiss due to lack of standing); *see also generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish federal constitutional standing "for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim").

91, ¶ 9, 953 A.2d 378. The statute authorizing appeals from the decisions of the LUPC provides that appeals must be brought pursuant to the Administrative Procedure Act (APA). *See* 12 M.R.S. § 689 ("Persons aggrieved by final actions of the commission . . . may appeal therefrom in accordance with Title 5, chapter 375, subchapter 7."). In turn, Section 11001 of the APA provides that any person aggrieved by a final agency action or by the failure or refusal of an agency to act is entitled to judicial review in the Superior Court. 5 M.R.S. § 11001(1)-(2).

A person is aggrieved within the meaning of § 11001(1)-(2) "if the person has suffered a particularized injury—that is, if the agency action operated prejudicially and directly upon the party's property, pecuniary or personal rights." *Nelson*, 2008 ME 91, ¶ 10, 952 A.2d 382. This particularized injury must "be distinct from any injury experienced by the public at large and must be more than an abstract injury." *Id.* "Being affected by a governmental action is insufficient to confer standing in the absence of any showing that the effect is an injury." *Lindemann*, 2008 ME 187, ¶ 15, 961 A.2d 538. It must be apparent from the dispute itself or the surrounding circumstances that the "asserted effect on the party's rights genuinely flows from the challenged agency action." *Nelson*, 2008 ME 91, ¶ 10, 953 A.2d 378. Whether a party has suffered or will suffer a particularized injury sufficient to confer standing is a mixed question of law and fact. *Norris*, 2005 ME 102, ¶ 13, 879 A.2d 1007.

The Law Court has characterized the showing necessary to demonstrate standing as minimal in the context of disputes involving abutting landowners. *See Roop*, 2007 ME 32, ¶ 8, 915 A.2d 966. "Because of the abutter's proximate location, a minor adverse consequence affecting the party's property, pecuniary or personal rights is all that is required for the abutting landowner to have standing." *Id.* (citation omitted). An abutting landowner may have standing to challenge a final agency action even in situations where the abutter has not suffered any economic harm. *Id.* ¶¶ 8-11 (denial of statutorily granted right to meaningful participation was a particularized injury that conferred standing); *see also Laverty v. Town of Brunswick*, 595 A.2d 444, 446 (Me. 1991) (threat of increased public use that could have resulted from the placement of a business near the plaintiff's property was a particularized injury that conferred standing); *In the Matter of International Paper Co., Androscoggin Mill Expansion*, 363 A.2d 235 (Me. 1976) (plaintiffs who breathed air in the area for which a paper mill had received air emission and discharge licenses suffered a particularized injury that conferred standing).

In this case, the Stories' 80C petition is challenging the LUPC's decision to ratify a settlement agreement that settled the LUPC's claims against the Coxes for violations of the land use rules that the LUPC administers. Although the petition/complaint contains no explicit allegation regarding what injury the Stories have suffered from the LUPC's decision to settle with the Coxes, a fair reading of the whole of the petition/complaint including incorporated Exhibit A, reveals that the Stories are alleging that the LUPC's failure to undertake other enforcement action, such as requiring the Coxes to remove the offending structure, has caused the Stories to suffer various injuries including: emotional distress, loss of the use and enjoyment of their

land, and diminution in the market value of their property.[5] Amongst other details, Exhibit A asserts that before the Coxes built the offending structure the entrance to the Stories' property was "wooded and beautiful" but is no longer "wooded and beautiful" because the land was cleared by the Coxes' construction activities. (Compl., Ex. A at 9.) Exhibit A also states that the Stories' property has lost its privacy as the Coxes have brought visitors to the property and created a potential for noise and disruption. (*Id.*)

The LUPC did not attempt to persuade the Court that these sort of injuries are not sufficient to confer standing; instead, the LUPC contends that the Stories have not been aggrieved by the settlement agreement because there is no direct relationship between the effect of the settlement agreement and the Stories' rights and interests. To that end, the LUPC asserts that the Stories were not a party to this settlement agreement, that their rights and obligations were unchanged by this agreement, and that the settlement agreement does not apply to the Stories' property.

The LUPC's argument is drawn from the Law Court's opinion in *Great Hill Fill & Gravel v. Board of Environmental Protection*, 641 A.2d 184 (Me. 1994). In that opinion, the Law Court reiterated the basic rule that "to have standing to challenge a final agency action, a litigant must demonstrate a particularized injury as a result of the action" and that the particularized injury requirement "is met when the judgment adversely and directly affects the party's property, pecuniary or personal rights." *Id.* at 184 (quoting *Anderson v. Swanson*, 534 A.2d 1286, 1287-1288 (Me. 1988)).[6] Based on that rule, the Law Court held that an adjoining property owner, Great Hill Fill, lacked standing to challenge a decision by the Board of Environmental Protection (BEP) to approve a settlement agreement between it and an offending gravel pit operator, Shapleigh, who operated a gravel pit on land adjoining Great Hill's. That conclusion was based on the Law Court's determination that "at the time of filing of its complaint and throughout the period for seeking review, Great Hill was, at most, only indirectly affected by Shapleigh's consent agreement[; i]t had no direct, legal relationship with either the site owner or Shapleigh." *Id.* at 184. However, context is needed to understand the Law Court's determination that "Great Hill's legal rights and responsibilities were unchanged by the Board's decision." *Id.*

This context is provided by the Superior Court's decision in the subsequent contract dispute, *Great Hill Fill & Gravel, Inc., v. Shapleigh*, No. CV-90-0162, 1995 Me. Super. LEXIS 408, (Nov. 14, 1995). In the decision, the Superior Court noted that two landowners agreed to permit Shapleigh to remove gravel from their respective lands in exchange for payment and an additional promise from Shapleigh with respect to one of the parcels to "fix the land so that afterwards the hill would not be steep, but be an easy slope." *Id.* at *2. These arrangements

---

[5] Documents that are referenced in a party's pleading may be considered on a motion to dismiss without converting the motion into one for summary judgment as long as the authenticity of the documents have not been challenged. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 9-11, 843 A.2d 43. The authenticity of the Stories' memorandum to the LUPC has not been challenged by any of the parties.

[6] In *Anderson*, the Law Court held that an abutting landowner had standing to challenge the decision of a municipality when the proposed addition to the neighbor's property threatened obstruction of the abutter's view. *Anderson*, 534 A.2d at 1288. The *Anderson* court noted that a "high degree of proof of a particularized injury" is not required. *Id.* (quoting *Grand Beach Ass'n v. Old Orchard Beach*, 516 A.2d 551, 553 (Me. 1986)).

continued until the landowners received a notice from the BEP informing them that they had established an illegal gravel pit. Shortly thereafter, Great Hill obtained permission from the BEP to operate a gravel pit on both parcels on the condition that Great Hill restore the land afterwards. The landowners and Shapleigh all settled their land use violations with the BEP.

The Law Court's holding that Great Hill had no standing to challenge the BEP's ratification of its settlement agreement with Shapleigh appears to have been based on the fact that the settlement agreement concerned violations which occurred before Great Hill had taken over operation of the gravel pit and on the fact that Great Hill's obligation to restore the land after extraction was unchanged by the BEP's settlement with Shapleigh. Thus, *Great Hill* is readily distinguishable from the situation described in the Stories' petition.

The more recent case, *Fox Islands Wind Neighbors v. Dep't of Envt. Prot.*, 2015 ME 35, 116 A.3d 940, although also factually distinct, provides a more useful reference in determining the issue at hand. The *Fox Islands* case involved a complaint brought by a community organization against a wind energy project run by Fox Island Wind. The Department of Environmental Protection (DEP) approved the wind energy project and issued a certification, which required Fox Island Wind to implement a noise reduction plan if the wind turbines caused excessive noise. The wind energy project began operating and soon after the community organization brought complaints to the DEP about noise from the turbines, which it backed up with evidence showing that, in particular weather conditions, the turbines were noisier than the DEP had permitted. The DEP responded by initiating its enforcement process, which included requiring Fox Island Wind to submit and implement a revised noise reduction plan. Eventually, Fox Island Wind submitted a plan that met the DEP's noise reduction requirements and the DEP issued a compliance order determining that the new plan met the agency's requirements. However, the community organization was not satisfied and brought an 80C action challenging the DEP's compliance order on the grounds that the compliance order did not adequately account for the breadth of weather conditions that could cause the turbines to produce excessive noise. Fox Island Wind moved to dismiss the 80C action on the grounds that the organization lacked standing as well other grounds. The Law Court characterized the DEP's compliance order as a consent decree—"an agreement reached by the parties in lieu of DEP's pursuing further enforcement action such as sanctions or greater conditions imposed upon Fox Island" (in essence, a settlement agreement)—and, as to the standing issue, held that the community organization had standing to challenge the compliance order because it had demonstrated a particularized injury, "namely the claim of negative impact from excessive noise emanating from the wind energy development." *Id.* ¶ 21 n.9. The Law Court further noted that there was no separation-of-powers issue resulting from interference with the DEP's prosecutorial discretion because the compliance order was an "enforcement action, a final agency action for which judicial review is expressly authorized by statute." *Id.*

The Stories' petition seeking review of the LUPC's settlement agreement with the Coxes is similar to the community organization's challenge to the DEP's compliance order in *Fox Island Wind Neighbors*. The LUPC's settlement with the Coxes is properly characterized as an enforcement action taken by the LUPC and the Stories are challenging the LUPC's enforcement action on the grounds that the LUPC did not go far enough. Namely, the

Stories' petition alleges that had the LUPC enforced the applicable land use regulations appropriately, the LUPC's enforcement action (settlement agreement or otherwise) would have required the Coxes to remove the offending structure and restore the land to its previous condition. When an abutting landowner suffers a particularized injury as the result of an agency's enforcement action such as the LUPC's settlement agreement, the agency's enforcement action is a proper subject for judicial review under the APA. *See Fox Islands Wind Neighbors*, 2015 ME 53, ¶¶ 21-25, 21 n.9, 116 A.3d 940.

When fairly read in its entirety, the Stories' petition alleges that the LUPC's enforcement action has negatively impacted them by causing them to suffer some diminution in the market value of their property, loss of use and enjoyment of their land, and other injuries. These alleged injuries are sufficient at this stage of the proceedings to support the Stories' standing to seek review of LUPC's final agency enforcement action (the settlement agreement).

For all of the above reasons, the Respondent's/Defendants' motion to dismiss count I is denied.

## B. Count II - Declaratory and Injunctive Relief

The LUPC, Coxes, and Gerard seek dismissal of count II against the Coxes and Gerard on the grounds that the claims in Count II with respect to the Coxes' house are duplicative of the claims in Count I. And, with respect to Gerard's alleged creation of a subdivision, they argue that the claims are not ripe for judicial review and judicial determination would offend the separation of powers by interfering with the LUPC's prosecutorial discretion. Interestingly, in their opposition, the Stories argued only that the LUPC did not have standing to move to dismiss Count II.[7]

*The Stories' Claims Against the Coxes in Count II*

When a claim for purportedly independent relief is joined with an 80C or 80B petition but is in reality duplicative of the petition, the Court has discretion to dismiss the independent claim on that ground. *Cape Shore House Owners Ass'n v. Town of Cape Elizabeth*, 2019 ME 86, ¶ 8, 209 A.3d 102; *Kane v. Comm'r of the Dep't of Health and Human Services*, 2008 ME 185, ¶¶ 30-32, 960 A.2d 1196; *Adelman v. Town of Baldwin*, 2000 ME 91, ¶¶ 6-7, 750 A.2d 577. If in raising the independent civil claim the petitioner relies on the same factual allegations and seeks the same relief as that sought in the 80C or 80B action, the court is within its discretion to dismiss the independent claim as duplicative. *Kane*, 2008 ME 185, ¶ 32, 960 A.2d 1196.

In *Kane*, the Law Court affirmed dismissal of a 42 U.S.C. § 1983 claim as duplicative of an 80C appeal, holding that the Superior Court did not abuse its discretion in dismissing the claim. In its analysis, the Law Court noted that the petitioner relied on the same factual

---

[7] The Stories' have argued that the Court should not consider the motions to dismiss Count II because the Stories' did not raise this count against the LUPC. Setting aside the matter of whether the LUPC may move to dismiss claims that are not brought against it, the Coxes (in writing) and Gerard (orally) joined in the LUPC's motion to dismiss and therefore there is no reason for the Court not to address the arguments raised with respect to Count II in the LUPC's motion to dismiss.

allegations and sought the same relief as she did in her 80C appeal except for a procedural due process allegation that she raised in the section 1983 claim. The Law Court further noted that the Superior Court would have had to engage in the same analysis in addressing the plaintiff's section 1983 claim as it engaged in when addressing the merits of the petitioner's 80C arguments.

The Law Court addressed another Rule 80C(i) issue, this time in the context of an action for declaratory judgment, in *Cape Shore House Owners Ass'n v. Town of Cape Elizabeth*, 2019 ME 86, ¶ 6, 209 A.3d 102. In *Cape Shore*, a house owners association sought judicial review of a zoning board's approval of a building application for a nonconforming structure and a declaratory judgment that a height restriction in a town's zoning ordinance was preempted by a state shoreland zoning statute. In its claim for declaratory judgment, the association also sought action by the court to invalidate the zoning board's approval of the building permit on the basis of state law – the same relief sought in the 80B appeal. The Law Court determined that in these circumstances the association's claim for declaratory relief was not independent from its Rule 80B appeal and thus the Superior Court's dismissal of the declaratory judgment claim as duplicative was not an abuse of discretion. *Id.* ¶ 9.

In count II of the complaint/petition in this case, the Stories seek a declaratory judgment declaring that the Coxes and Gerard have violated Maine's land use planning statutes and regulations, an injunction requiring the Coxes to remove the offending structure from their property, and an injunction requiring the Coxes and Gerard to "remediate or correct" an allegedly illegal subdivision that Gerard created in violation of Maine law.[8]

The Stories rely on the same factual allegations to support their declaratory judgment claim as they do their 80C appeal. Additionally, the Stories request largely the same relief against the Coxes in the declaratory judgment claim as in their 80C appeal, namely a finding that the Coxes have violated the pertinent land use laws and regulations and an order requiring the Coxes to remove the offending structure. To resolve the Stories' claims in Count II regarding the Coxes' house, the Court will need to engage in largely the same factual analysis that it will use with respect to the Stories' 80C appeal. The only difference between Counts I and II against the Coxes is that the relief in Count II adds a request that the Coxes along with Gerard remediate the allegedly illegal subdivision. This additional request for relief does not save Count II from being dismissed as to the Coxes as the Stories have no private right to enforce the land use law and regulations governing Maine's disorganized and unorganized lands. (See pages 13 to 15 of this Order for a complete analysis of this issue.)

Additionally and alternatively, the Stories have no private right to enforce the laws and regulations at issue and this serves as an independent basis to dismiss Count II.

---

[8] Although, the Stories do not expressly identify the particular statutes and regulations that the Coxes and Gerard have violated, it is apparent that the Stories are referring to 12 M.R.S. § 681 through § 685-h (Chapter 206-A, subchapters 1-2), the statutes setting forth the authority of the LUPC and providing standards for the governing of the usage of land in Maine's organized and deorganized areas. The regulations the Stories refer to appear to be the regulations that the LUPC has prescribed to implement these statutes governing the usage of land in these areas.

The direct review of agency action afforded by 5 M.R.S. §§ 11001-11008 is exclusive unless it is inadequate. *Cayer v. Town of Madawaska*, 2016 ME 143 ¶ 16, 148 A.3d 707; *Colby v. York Cnty. Comm'rs*, 442 A.2d 544, 547 (Me. 1982). The claims in Count II as they relate to the Coxes are properly addressed in the 80C appeal, and not as an independent claim for declaratory judgment. See *Tremblay v. Land Use Regulation Comm'n*, 2005 ME 110 ¶11 & n.1, 883 A.2d 901 (dismissing Tremblay's request for declaratory judgment "because of the exclusive nature of the administrative appeal process.")

For these reasons, the Court dismisses Count II as to the Coxes.

### The Stories' Claims Against Gerard in Count II

The Stories' request for declaratory judgment against Gerard presents different issues. The Stories' claims against Gerard in Count II rely on some of the same allegations that the Stories rely on in their 80C appeal; however, Gerard is not a party to Count I and the 80C appeal does not include any request for relief against Gerard. Therefore, the claims against Gerard in Count II are not duplicative of the 80C appeal.

In Count II, the Stories ask that the Court determine that Gerard violated the applicable land use planning statutes governing Maine's unorganized and unorganized areas and order him to correct the allegedly illegal subdivision he created. However, for the Stories to have a basis upon which to obtain this declaratory and injunctive relief, the state Legislature would have had to have created a private cause of action giving members of the public the right to enforce the land use laws and regulations which govern the usage of land in these areas.

To determine whether the Legislature has provided the public with a private cause of action to enforce these land use statutes and regulations administered by the LUPC, the Court must interpret the text of the statutes and, if necessary, examine other materials to discern the Legislature's intent.

When the Court interprets a statute, it seeks "to give effect to the legislative intent by examining the plain meaning of the statutory language." *Charlton*, 2001 ME 104, ¶ 10, 774 A.2d 366. In doing so, the Court interprets the relevant sections of the statute at issue "in the context of the statutory scheme in which it is found." *Id.* "When the plain meaning of the text does not resolve an interpretative issue, [the court] then consider[s] the statute's history, underlying policy, and other extrinsic factors." *Id.* When determining whether the Legislature has created a private cause of action in a statute, the Court first determines whether the Legislature has expressly created the cause of action through the statutory language. *Id.* ¶ 15. If the plain meaning of the text indicates that the legislature has not expressly created a private right of action, the Court will then determine "if such a right of action can be implied." *Id.* Implied private rights of action are disfavored. *See id.* ¶¶ 15-19. (commenting that if the Legislature intends that a private party have a right of action it would clearly express its intent in the statutory language).

The portion of 12 M.R.S. §§ 681-685-H most relevant to this inquiry are subsections 685-C(8) and 685-C(9), which provide specific provisions governing the enforcement of violations of the land use planning rules governing the usage of the land at issue. Section 685-C(8) is quoted in full below:

**Enforcement, inspection, and penalties for violations.** Standards, rules and orders issued by the commission pursuant to this chapter have the force and effect of law. No development may be undertaken, except in conformance with this chapter, the standards, rules and orders enacted or issued pursuant to this chapter, and any real estate or personal property existing in violation of such is a nuisance. For the purposes of inspection and to ensure compliance with standards, orders and permits issued or adopted by the commission, authorized commission staff, forest rangers and the state supervisor or consultant personnel may conduct investigations, examinations, tests and site evaluations necessary to verify information presented to it and may obtain access to any lands and structures regulated pursuant to this chapter.

Any person who violates any provision of this chapter, or the terms or conditions of any standards, rules, permits or orders adopted or issued pursuant to this chapter, is subject to a civil penalty, payable to the State, of not more than $10,000 for each day of the violation.

In addition to the other penalties provided, the commission may, in the name of the State of Maine, institute any appropriate action, injunction or other proceeding to prevent, restrain, correct or abate any violation hereof or of the orders or standards or rules promulgated hereunder. This action may include, but is not limited to, proceedings to revoke or suspend any commission permit or approval, taken either before the commission itself in accordance with Title 5, section 10004, before the District Court in accordance with Title 4, chapter 5 or, notwithstanding the provisions of Title 4, section 152, subsection 9 or Title 5, section 10051, before the Superior Court as part of an enforcement action brought by the commission.

In addition to any such penalties or remedies provided in this subsection, the court may order restoration of any area affected by any action or inaction found to be in violation of any of the provisions of this chapter or of any order, standard, rule or permit of the commission, or any decree of the court, to the condition of such area prior to the violation. When such restoration is not practicable, the court may order other actions to be taken by the person charged with the violation which are in mitigation of the damage caused by the violation.

A person who willfully or knowingly falsifies any statement contained in a permit application or other information required to be submitted to the commission is in violation of this chapter and subject to the penalties of this chapter.

12 M.R.S. § 685-C(8).

The following subsection, entitled "representation in court," provides that "[t]he commission may authorize certified employees of the commission to serve civil process and represent the commission in District Court in the prosecution of violations of those laws enforced by the commission. . ." 12 M.R.S. § 685-C(9).

It is clear from the plain meaning of the language in 12 M.R.S. § 685-C(8)-(9) and the other statutes in the Chapter 206-A, subchapters 1-2, that the Legislature did not expressly create any private cause of action to enforce the laws pertaining to land use in Maine's unorganized or deorganized areas, or create a private right to enforce the land use regulations created by the LUPC to implement those laws.

Nor can a private cause of action be reasonably implied from the statutory language or legislative history.[9] *See generally Charlton*, 2001 ME 104, ¶¶ 15-18, 774 A.2d 366; *Herrle v. Town of Waterboro*, 2001 ME 1, ¶ 11, 763 A.2d 1159.

Accordingly, the Court concludes that in enacting in 12 M.R.S. §§ 681-685-H the Legislature did not provide the public with a private right of action to enforce the land use laws and regulations governing Maine's disorganized and unorganized areas. Only the LUPC may bring enforcement actions against violators of those land use rules and regulations.

Moreover, the issue of how to resolve alleged violations of the statutes and rules administered by the LUPC is in the first instance a matter for the Commission. 12 M.R.S. § 685-C(8); *see generally Raposa v. Town of York*, 2019 ME 29, ¶ 11 n.4, 204 A.3d 129; *Herrle*, 2001 ME 1, ¶ 10, 764 A.2d 1159. In this case, the LUPC has not yet decided how (or if) to resolve Gerard's alleged violations; thus, the alleged violation is not ripe for judicial review. *See Maine AFL-CIO v. Superintendent of Ins.*, 1998 ME 257 ¶ 7, 721 A.2d 633.

For all of the above reasons, the Court grants the motion to dismiss count II as to Gerard.

---

[9] In particular, § 685-C(8) gives authority to conduct inspections and investigations of violations only to the LUPC and its staff. Further, the subsection states that if an individual violates a provision of Chapter 206-A or the LUPC's regulations the person is subjected to a "civil penalty, *payable to the State . . .*" but does not mention any damages payable to individuals harmed by such a violation. 12 M.R.S. § 685(C)(8). In regard to actions for injunctive relief specifically, the subsection provides that "*the commission may, in the name of the State of Maine*, institute any appropriate action, injunction or other proceeding to prevent, restrain, correct or abate any violation hereof . . ." *Id.* The fact that this paragraph explicitly states that such actions for injunctive relief are taken by the "the commission, in the name of the State of Maine" and contains no reference at all to actions taken by private citizens shows clearly that the Legislature intended such enforcement actions to be taken only by the LUPC for the interest of the State and did not intend to create a basis for private plaintiffs to undertake enforcement actions to vindicate some personal right. Lastly, the Court has found nothing in the legislative history of § 685-C(8) that suggests the Legislature intended to create a private cause of action.

## C. Count VI

Count VI of the Stories' complaint alleges fraud against the Coxes and Gerard. The LUPC, Coxes, and Gerard have moved to dismiss count VI under M.R. Civ. P. 12(b)(6) on the grounds that the Stories have failed to plead the essential elements of fraud.[10]

For the Stories' fraud claims to survive this motion to dismiss, the Court must determine that the Stories have pled sufficient facts to support all of the essential elements of a claim for fraud against the defendants. These elements are:

1. A party made a false representation,
2. The representation was of a material fact,
3. The representation was made with knowledge of its falsity or in reckless disregard of whether it was true or false,
4. The representation was made for the purpose of inducing another party to act in reliance upon it, and
5. The other party justifiably relied upon the representation as true and acted upon it to the party's damage.

*Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280; *Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640. The Maine Rules of Civil Procedure provide more rigorous pleading requirements for all fraud claims. Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." M.R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.* In determining whether a plaintiff has pled fraud with the particularity required by Rule 9(b), "the test . . . is not whether the complaint sets out a textbook definition of fraud, but whether defendant is fairly apprised of the elements of the claim." *TD Banknorth, N.A. v. Hawkins*, 2010 ME 104, ¶ 24, 5 A.3d 1042.

Count VI of the complaint repeats the allegations in the other sections of the complaint, which were previously discussed in this order, and adds the following allegations:

- Gerard and the Coxes "intentionally and fraudulently structured their land transaction in such a manner to mislead the LUPC and to obtain a building permit from the LUPC despite the fact that the Cox property is not eligible for a building permit under Maine's land use planning statutes and regulations." (Pl.'s Compl. ¶ 38.)

- The Coxes "intentionally and fraudulently submitted an application to the LUPC for a building permit that omitted significant information and/or contained false information." (*Id.* ¶ 39.)

---

[10] The Stories' have argued that the Court should not consider these motions because the Stories' did not raise their fraud claim against the LUPC. Setting aside the matter of whether the LUPC may move to dismiss claims that are not brought against it, the Coxes (in writing) and Gerard (orally) joined in the LUPC's motion to dismiss and therefore there is no reason for the Court not to address the arguments raised with respect to Count IV in the LUPC's motion to dismiss.

- As a result of the defendants' fraudulent conduct, the LUPC issued the Coxes a building permit despite the fact that the Coxes were not eligible for the permit. (*Id.* ¶ 40.)

- "The Coxes then constructed a structure on their property, in violation of the law." (*Id.* ¶ 41.)

- The Stories suffered damages because of the defendants' conduct. (*Id.* ¶ 42.)

Defendants contend that Plaintiffs' fraud claim is "fatally flawed because it does not aver that the Stories relied upon any false representation or material omission to their detriment." (Mot. Dismiss 13.) The defendants argue that instead of alleging that the Stories relied upon the Coxes misrepresentations, the complaint alleges only that the LUPC relied on the alleged misrepresentations. The Court agrees.

The Stories' complaint lacks any allegation that the Stories relied on the misrepresentations that the Coxes and Gerard allegedly made. To sufficiently allege a claim for fraud, a complaint must allege with particularity that the plaintiff justifiably relied on a misrepresentation of a defendant and that the plaintiff acted upon the misrepresentation to the plaintiff's detriment. *Barr*, 2012 ME 108, ¶ 16, 49 A.3d 1280. Because the Stories have not alleged with particularity that they relied to their detriment on any misrepresentation by any defendant, their complaint does not state a claim for fraud. Count VI is dismissed.

## D. The Stories' Motion to Amend

The Stories have moved that, in the event that the Court finds any of the allegations in their complaint insufficient to support their claims, they be granted leave to amend their complaint. The Court denies this broad motion. *In re Sen*, 1999 ME 83, ¶¶ 10-11, 730 A.2d 680 (affirming a trial court's denial of leave to amend where the moving party "failed to explain" how the amendment would cure their pleading and failed to attach a copy of the proposed amendment.)

## E. Motion to Specify the Future Course of Proceedings/Scheduling Order

The Stories filed a motion to specify the future course of proceedings pursuant to Rule 80C(i) at the same time they filed their complaint. The Stories have joined with their 80C petition, a request for a declaratory judgment and injunction, and various common-law and statutory tort claims against the Coxes and Gerard. M.R. Civ. P. 80C(i). In this situation, the Court is being called upon to act both in its appellate capacity reviewing the agency record with respect to the 80C petition and as a court of original jurisdiction over the common law and statutory claims. *See generally,* M.R. Civ. P. 80B(i) advisory committee's note to 1983 amend., Feb. 1983, 3A Harvey & Merritt, *Maine Civil Practice* 579 (3d 2018-2019 ed.).

The LUPC has requested that the court sever the 80C petition from the Stories other claims because the claims are private tort claims and do not seek relief from governmental action. The Stories argue that the Court should not sever the claims because their claims arise out of

17

a common factual background and all of the claims including the 80C appeal relate to the Stories' property claims.

Clearly, the claims all arise out of a common factual background and all claims relate to a specific building on one parcel of real estate. The parties are not seeking a jury trial on any of the claims. The Court is satisfied that proper procedure can be followed and the role of the Court as an appellate body as to the 80C claim and as a court of general jurisdiction regarding the independent claims can be respected while trying all counts of the complaint together. The Motion to Sever is denied.

The future course of proceedings shall be as follows:

1. LUPC shall have 60 days from the date this Order is docketed to prepare and file the administrative record;
2. Plaintiffs shall have 30 days after the filing of the record to designate expert witnesses and provide Rule 26(b)(4) information;
3. Defendants shall have 60 days after the filing of the record to designate expert witnesses and provide Rule 26(b)(4) information;
4. The discovery deadline is 90 days after the filing of the record;
5. This matter will thereafter have a pretrial conference and be set for a non-jury trial. All parties informed the Court on July 26, 2021 that they were seeking a non-jury trial.

Entry:

1. The Motions to Dismiss regarding Count I are DENIED;
2. The Motions to Dismiss regarding Count II are GRANTED;
3. The Motions to Dismiss regarding Count VI are GRANTED;
4. The Motion to Amend the Complaint is DENIED;
5. The Motion to Sever is DENIED; and
6. The Scheduling Order is as follows:
   a. LUPC shall have 60 days from the date this Order is docketed to prepare and file the administrative record;
   b. Plaintiffs shall have 30 days after the filing of the record to designate expert witnesses and provide Rule 26(b)(4) information;
   c. Defendants shall have 60 days after the filing of the record to designate expert witnesses and provide Rule 26(b)(4) information;
   d. The discovery deadline is 90 days after the filing of the record;
   e. This matter will thereafter have a pretrial conference and be set for a non-jury trial.

_9/14/21_
Date

/Ann M. Murray, Justice
Superior Court

**ORDER/JUDGMENT ENTERED IN THE COURT DOCKET ON:** _9/22/21_

18

| Date Filed | 3/20/20 Penobscot County | Docket No. AP-2020-6 |
|---|---|---|

Assigned to Justice Ann M. Murray

Action:

MICHAEL E. STORIE, DAVID B.   v.   LAND USE PLANNING COMMISSION
STORIE, AND JAY T. STORIE

DAVID COX, ASHLEY COZX, amd RONALD GERARD
STATE OF MAINE DEPARTMENT OF AGRICULTURE

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Patrick Hunt | Caleb Elwell AAG for Land Use Planning Commission |
| P O Box 130 | 6 State House Station, Augusta, ME 04333-0006 |
| 7 Sherman Street | |
| Island Falls, ME 04747 | Daniel Nelson Esq. Atty for David Cox and Ashley Cox |
| | P O Box 804 |
| Date of | Houlton, ME 04370 |
| Entry | Charles W. Cox Esq. Atty for Ronald Gerard |